WILLIAM BRYANT vs. THOMAS OWEN.

*Error from Tuscaloosa Circuit Court*—Before the Hon.
A. CRENSHAW.

———————

An agency, such as is created by the relation of client and attorney, does not authorise the attorney to sue in his own name, even on a note payable to a particular person, or bearer.
Not even with the consent of the principal.

This was an action of debt on a promissory note, payable to one Robinett, or bearer. There was a general demurrer to the declaration, which was overruled. The defendant then pleaded—

1st. That Owen was not the legal holder of the note.

2d. *Nil debet*—Payment and off set.

On these pleadings there was a verdict for the plaintiff Owen.

The points involving the present decision in this cause, came before the court on a bill of exceptions, which show the following facts.

The court charged the jury on the trial in the court below, that before the defendant could avail himself of any defence which existed against the note in the hands of the original payee, it was necessary for defendant first to prove, that the note was transferred by the original payee, after it became due, notwithstanding that the defendant proved that the plaintiff, Owen, had given no value for the note, but had received the same for collection, as an attorney at law, from one Spears, who claimed its contents.

The defendant requested the court to charge the jury, that if they believed the plaintiff received the note, not in the

26

Bryant
vs.
Owen.

course of mercantile transactions, but as an attorney at law, for collection ; then he was not entitled to recover. The court refused this charge.

It further appeared, that the plaintiff Owen, was the attorney of Spears, who was the owner of the note, and that he had sued on the same in his own name.

MAY,
WILSON, and  } For Plaintiff—
CRABB,

Cited *Chitty on Bills*, p. 68, 69, 70—*ibid.* 129, 183—3 *Kent*, 51, 52—10 *Johns.* 398, 388—11 *Johns.* 23, 25—12 *Johns.* 1—2 *Bos. & Pul.* 411—3 *Bos. & Pul.* 146—5 *Mass.* 491—6 *Mass.* 253—1 *Camp.* 337—2 *Camp.* 36—1 *Johns. Cas.* 103—5 *Mason,* 58.

PECK, *contra.*
*Chitty on Bills,* 89, 511, 512—4 *Taunt.* 114—2 *Camp.* 596—5 *Mass.* 334—3 *Day,* 311—3 *Johns. Cases,* 253—4 *Binney,* 366.

By Mr. Justice SAFFOLD :

This was an action of debt, brought by Owen as bearer, against Bryant as maker, of a promissory note, payable to A. Robinett, or bearer. The defendant below, pleaded that Owen, the plaintiff, was not the legal holder of the note ; also *nil debet,* payment, and set off—on which the plaintiff joined issue ; and on trial in the Circuit Court, obtained a verdict for the amount of the note.

The questions presented for revision, arise out of exceptions to the opinion of the court, taken on the trial.

1. That the court charged the jury, that before the defendant could avail himself of any defence, which existed against the note, in the hands of the original payee, it was necessary for the defendant, first, to prove that the note was transferred by the original payee, after it became due—*notwithstanding*

*the defendant proved that the plaintiff had given no value for the note.*

2. The defendant requested the court to instruct the jury that if they believed the plaintiff received the note sued on, not in the usual course of mercantile transactions, but as an attorney at law, for the purpose of collection, then he is not entitled to recover, which was refused.

The charge given as above stated, and the refusal of the court to give the other instructions, as required, are the causes assigned for error.

It is necessary to remark, that this case, having been previously before this court, at the instance of the same party, when the judgment was reversed, and the cause remanded; principles were then presented and discussed, and by the court decided, which, in some degree, limit our present inquiries; and, that according to the practice of this and other courts, when principles have once been determined here, they are ever afterwards to be regarded as the law of the same case, if subsequently brought up for further revision. We then recognised the principle, that possession of a note, bill, &c. constitutes *prima facie* evidence of right; but that when it became material for the purpose of defence, that the plaintiff's interest or capacity in the suit should be known (and it may be rendered so in every case by the issue) then to permit the defendant to make the proof, does not infringe any rule of law, and may promote justice in many cases : also, that the plaintiff's right to recover, in such cases, depends on the truth of the fact, whether or not he be the owner of the instrument; and notwithstanding the legal presumption of ownership, it is subject to be rebutted, and if successfully done, the plaintiff must fail in his action; that to determine the issue of payment or set off, it might be indispensable to know, in whom the interest of the note resides ; and that the act of ownership having been directly in issue, and evidence offered by the defendant to rebut what was only a legal presumption, he was entitled to the benefit of the proof. It is

true that on the former occasion, we intimated an opinion, that if the plaintiff held the note only as agent for the rightful owner, and had, by his sufficient authority, sued in his own name, he could recover; but if, on investigation, the contrary appeared, he could not. Then we gave no sanction to the idea, that if it appeared the plaintiff sued only in the capacity of agent, the defendant was not entitled to every matter of defence, he could have had, if the suit had been brought in the name of the principal: nor was the manner in which it was supposed an agent could sue, defined. Whether in his own name, as the legal owner, or as the representative of the principal, expressing the capacity of each, was left for future consideration ; but it was then expressed, that the authority of the agent to sue in his own name, should appear. Among other considerations, it may be material to inquire if the contrary implication would not arise from the common relation of client and attorney at law.

a3 Kent, 51.   It is said[a] that " possession is *prima facie* evidence of property in negotiable paper, payable to bearer, or indorsed in blank, and such a *bona fide* holder can recover upon the paper, though it come to him from a person who had stolen or robbed it from the true owner, provided he took it immediately *in the course of trade and for valuable consideration,* and under circumstances of due caution ; and he need not account for possession of it, unless suspicion be raised." This is understood to be the current doctrine, recognised in a great variety of cases, both English and American.

It is on this general principle, that the counsel for the defendant in error, is understood to contend, and the Circuit Court to have decided, not only that the agent could maintain the suit in his own name alone, without any interest in the note, but also, that before the defendant could avail himself of any defence which existed against the note in the hands of the payee, it was necessary he should first prove that the note was transferred by the payee *after it became due.*

3 Kent, 52.  Yet the same authority[b] declares, that " as between the ori-

ginal parties, these provisions do not apply, and the consideration may be inquired into ; and that it may be inquired into," when the indorsee took the paper with no tice of the illegal consideration, or of the want of it, or of any circumstance which would have avoided it in the hands of the indorser ; or *when not taken in the course of mercantile business*, or after it was due. According to this doctrine, it is obvious, that if one who is not a *bona fide* holder, for a *valuable consideration*, sue upon a note as indorsee, and *a fortiori*, if he suc as bearer, the defendant is entitled to every equitable defence against the note that he could make if the suit had been brought by the payee. One suing merely in the capacity of agent, without any interest, (as is understood to be the case here) can occupy no better grounds.—— This right of equitable defence, is admitted by the counsel for the defendant in error, and he insists that the record shows that Bryant had this privilege, and could show nothing : but the record shows that this privilege was not allowed to the full extent. It seems to have been allowed only by previous proof, that the note was transferred by the payee *after it became due.*

This is conceived to have been an unauthorised restriction of the right. By the common law it was absolute and general, when the plaintiff had not acquired his right in the usual course of trade, for a valuable consideration ; and by the statute of 1812, concerning the assignment of bonds, notes, &c. the defendant was entitled to the benefit of any payment, set off, or discount, which had arisen against the note, previous to notice to him of a legal transfer thereof, and this equally, whether the transfer was before or after the note became due. If it be contended, that the plaintiff below, sued merely as agent or attorney for his principal, who was a *bona fide* holder, for a valuable consideration, my reply is, that no such person is shown in the proceedings, so as to be brought within the cognizance of the court, and therefore, cannot receive its pretection.

Bryant        The case mainly relied upon by the counsel for the defen-
vs.           dant in error, is that of *Mauran* vs. *Lamb*.[a] It is true, that
Owen.
[a]7 Cow. 174. the Supreme Court of New-York there held, that one holding
a check or note, payable to bearer, as mere agent, may sue
on it in his own name; and it does not lie with the opposite
party to object to the plaintiff's want of interest. The court
recognised the rule, which I admit to be sound, " that the
bearer of a note or bill, payable to bearer, need not prove a
consideration, unless he possesses it under suspicious circum-
stances." I also admit, that the suspicion alluded to, has a
more particular reference to fraud, illegality, or some impro-
priety in the manner of obtaining the instrument, than to the
interest of a plaintiff therein, to whom the owner has duly con-
fided the paper for collection or otherwise; but by analogy,
the same principle applies to all cases, in which suit is brought
in the name of one having no interest in the demand, and
without legal authority to sue and recover upon it.

It is also worthy of notice, that the instrument sued on in
the case last referred to, was rather in the nature of a bank
note, than an ordinary individual promissory note. No per-
son was named in it as payee. It was a check on a bank,
made payable to No. 25, or bearer, which contemplated no
other *indicia* of ownership than that of possession. The au-
thorities referred to in support of that decision, are cases, in
which the right to sue in the name of agents or trustees, was
given by *indorsements* either in full or in blank; and where,
in such cases, it was held that the defendant should be per-
mitted to avail himself of a defence against the original par-
ty. The court there inclined to admit, that in such case the
defendant could not plead a set off against the *cestui que trust*;
that their statute might apply alone to the parties of record.
However, we might be disposed to consider that question un-
der our statute, the unavoidable consequence of sustaining
the right of the plaintiff to sue in his own name, as the imme-
diate assignee of the payee, without any interest, would be to

deny any protection to the *cestui que trust*, or any other whose interest or privity is not disclosed by the proceedings.

In this case, the inference to be drawn from the declaration, is, that Owen was the immediate assignee, by delivery, of Robinett, the payee of the note. Then, when it appears that the plaintiff has no interest in the suit, it follows that he has no claim to the attitude of a *bona fide* holder for a *valuable consideration*, or of one *who has received it in the usual course of business*. The authority mainly relied upon in the case referred to, (of *Mauran* vs. *Lamb*) was the case of *Payne* vs *Edin*,[a] where the plaintiff had no interest, but was merely a trustee for others, and no objection was taken to his want of interest. It is thus noticed—" the question was as to the consideration of the note, and that being illegal, the plaintiff failed. *Thompson*, J.—who delivered the opinion of the court, considered the cause in the same point of view as if the original parties were before the court." It is necessary to observe, that in this latter case, the plaintiff's want of interest was not made an objection to his right of action ; also, that if it had been, the plaintiff in fact held the note under an endorsement, which vested the legal title to the paper in him. It was, therefore, not a parallel case to the present, nor to that in which it was quoted, unless the *bank check payable to No.* 25, *or bearer*, was viewed as cash, or as a bank note passing as money, and vesting the right in any who might be the possessor for the time being. It is only by so considering it, that the decision can be reconciled with the current decisions in that state.

[a] 3 Caine's R. 213.

The case of *Ballard* vs. *Bell*,[b] which has been referred to by the counsel for the defendant in error, contains a useful explanation of the principle applicable to the case of *Mauran* vs. *Lamb*. It draws a clear distinction between the nature of the instrument declared on in either of these cases, and the note now under consideration.

[b] 1 Mason 243

That was an action of debt, brought on a *bank note payable to W. Pitt, or bearer*, which name was admitted to be a mere

Bryant
vs.
Owen.

*fiction*, adopted according to bank usage. The suit was brought in the name of a citizen of a different state. Objection was made for want of jurisdiction, that the case fell within the exception as to promissory notes and *choses in action*, created by the judiciary act of Congress, of 1789 ; and that the plaintiff was bound to state all that was necessary to give jurisdiction to the Federal Court ; that the plaintiff was to be regarded as an assignee, and it did not appear that the suit, if in the name of the assignor, would have been within the jurisdiction of the court. Judge *Story* overruled the objection. He said, " to bring the case within the exception, the action must not only be founded on a *chose in action*, but it must be assignable, and the plaintiff must sue in virtue of an assignment. A note payable to bearer, is often said to be *assignable by delivery ;* but in correct language, there is no *assignment in the case.* It passes by mere delivery, and the holder never makes any title by or through any assignment, but claims merely as bearer." That the case was stronger in relation to *bank notes*, for, in the common transactions of life, they pass by delivery as cash. That even a payment to *W. Pilt,* if a real person, in a case like that, " would be no discharge of the note as against a subsequent *bearer, bona fide, for a valuable consideration ;* for bank notes payable to bearer, are always deemed good while they remain in circulation, notwithstanding they have been presented to the bank and paid by the bank." That in case of notes payable to bearer only, it is impossible for any court to say to whom in particular the notes are originally payable, for no person in *rerum natura* is specified. He also said, the whole object of the bank would be defeated, if when notes are made payable to a *fictitious payee* or bearer, the holder could not entitle himself to recover without showing an assignment or delivery from the fictitious person. Now if we apply this doctrine to the check in *Mauran* vs. *Lamb*, that as it was payable to a *fiction* or a *mere ideal thing*, so that in legal contemplation it does not admit of an *assignment*, even by delivery ; but that

bare possession, *for the time being*, vested the legal right in the bearer, as in the case of bank notes, or other money, then the case of this check does not apply to the present.

It is quite clear that the check did not admit of an indorsement by the payee, or of any ordinary assignment. The note under consideration did ; being payable to Robinett. He was competent to assign it by indorsement or delivery, as was also any subsequent holder. And though bare possession of it was *prima facia* evidence of ownership, it was nothing more—and the proof has established the contrary. If it be admitted that any one in whom the legal title to a negotiable or assignable security has vested, without any individual interest, may maintain a suit upon it in his own name ; it does not follow, that an agent or attorney, to whom the paper has been delivered for a different purpose, has the same right. If by law, the agent is not, under the circumstances, entitled to sue in his own name, the consent merely, of the principal, cannot confer the privilege. Numerous authorities authorities cited by the plaintiff in error, show the true principle to be, that the existence of an ordinary agency, or such as arises from the relation of client and attorney at law, does not authorise the attorney to sue in his own name ; and that the bare consent of the principal appearing in evidence on the trial, does not remove the objection.

In the case of *Givin* vs. *Cantim*,[a] an action of assumpsit was brought on a receipt given by the defendant to *Simmons*, [a]10 John. 387 for a paper security for money to be collected by the defendant. *Simmons* had given to the plaintiff a power of attorney, authorising him, for said Simmons, *and in his name and to his use, to ask, sue for and receive* the money, &c. being a general letter of attorney, in the common form. The court decided that the suit could not be sustained in the name of the attorney ; and stated as the objections, that he had no *bona fide* interest—was a mere attorney to collect the debt, and that there was no express promise by the defendant to

pay the money to him ; also, that the letter of attorney was revocable, and there was no implied *assumpsit* to the plaintiff.

In the case of *Piggold* vs. *Thompson*,[a] the defendant had agreed, in writing, to pay the rent of certain tolls which he had hired " to the treasurer of the commissioners." The plaintiff was the treasurer at the date of the contract, and so continued during the pendency of the suit. The court held, that no action for the rent could be maintained in the name of the treasurer ; that the manifest intention of the agreement, was, that the defendant should pay to any person whom the commissioners should choose to make their treasurer for the the time being, but by law a debt is not *so assignable*.

In reference to these two latter cases, and as a further test of the principle, let us suppose that the attorney or treasurer had died *pending* the actions, what would have been the consequence ! Could their representatives have prosecuted the actions ? Surely not—if they had no beneficial interest in the suits, and could have been removed by the principals at pleasure, as was obviously the case. Then apply the same test to the case under consideration, and the same objections arise. They are all attributable to the want of legal title to the demand in the plaintiff ; and to which I have alluded as an insuparable objection to the recovery.

It is very clear that the same difficulty does not exist where actions are brought in the name of trustees duly appointed, or of indorsers of assignable securities ; because there the *legal* title is vested in the plaintiff, whether he have any individual interest or not. Such is not the case with a mere. agent or attorney to whom the paper has been delivered for collection, without any actual *assignment of the right*.

The bare possession of an assignable paper, with the consent of the owner to sue in the name of the agent, does not impair the rights of the principal ; he is still the legal holder, and no other can sue in his stead.

The case was entirely different in *McClausland* vs, *Drake*, where there was an actual indorsement, vesting the legal

right in the assignee, and there was no other objection than an alleged composition of *felony*, in which the indorser and indorsee had participated.

The case of *Gilmore* vs. *Pope*,[a] is strongly applicable to the principle in question. There the defendant had subscribed for shares in a turnpike, and promised to pay the plaintiff as agent of the proprietors. It was held that the agent could maintain no action—that the suit must be by the proprietors in their corporate capacity ; that the consideration was between them and the defendant alone.

The case of *Thatcher* vs. *Winslow*,[b] though not now produced, is sufficiently recollected, to satisfy me that it sustains the principle contended for by the plaintiff in error, to the fullest extent ; perhaps goes farther than necessary for this case—that no person can sue even as indorser of 'a negotiable note, unless he be the owner, or have some *legal or equitable interest*. There perhaps, the expression in the indorsement, that it was for the benefit of the *indorser*, may have prevented the intended assignment of *legal interest*.

The decision of the court, in the case of *Johnson, use of Stone* vs. *English*,[c] is strongly opposed to the principle which would sustain this right of action.

There are various other cases condemnatory of this right— (See *Vischin* vs. *Yates*[d]—*Yates* vs. *Foot*[e]—*and Bainbridge* vs. *Downey*.[f])

If the rules of law, correctly expounded, will not reach the justice of this particular case, I can only regret it. Our province is to declare the law as we find it. In its application to this case, we hold it to be—that a mere agency, such as is created by the relation of client and attorney, does not authorise the latter to sue in his own name alone, even on a note payable to a particular person *or bearer*, and that the consent of the principal, appearing in evidence, does not remove the objection : also, that if the plaintiff's right to sue in his own name could be sustained on the requisite authority, still the defendant would be entitled to the benefit of any

Bryant
vs.
Owen.

[a]5 Mass. Rep.
491.

[b]5 Mason, 58.

[c]1 Stew. 169.

[d]11 Johns. 25
[e]12 Johns. 1.
[f]6 Mass. Rep.
253.

legal defence, which would be available between the original parties, whether it arose before or after the maturity of the note ; that no intermediate holder, in whom the interest may have vested, being disclosed by the proceedings, the rights of none such can be recognised and protected ; therefore, we are unanimous in reversing the judgment.