BOYD *vs.* VANDERKEMP and others.

Upon a bill praying for the specific performance of a contract for the sale of land, or for a compensation in damages, filed by the vendee, against the vendor, and a subsequent purchaser who had notice of the complainant's rights, where the answer of the subsequent purchaser admits that he purchased with notice of the complainant's claim to the premises, and where the bill has been taken as confessed by the other defendants, the proper decree, if the court considers the other material allegations in the bill to have been proved, is to direct a specific performance of the contract by the subsequent purchaser, in whom the legal title to the land is vested; so as to give to the complainant the land itself, with the improvements, if any, which he has made thereon, upon his paying the sum originally agreed to be paid by him, with interest. And it is erroneous, in such a case, to decree a compensation in damages, to the complainant, for the non-performance of the contract.

Upon a bill of that nature, the complainant is not entitled to any decree against a defendant, in whose name, as the agent of the vendor, the bill alleges the contract for the sale of the premises to the complainant to have been executed, by a sub-agent; where such defendant has no interest in the controversy, and is not charged with having done any act, as agent, which was fraudulent or inequitable, nor with having had notice of the contract made by such sub-agent, in his name, until after the sale of the premises to a second purchaser.

It is erroneous to make a mere agent a party to a suit for the specific performance of a contract. And if he is made a party, the complainant will not be entitled even to a decree for costs against him; although he suffers the bill to be taken as confessed for want of an answer.

A general agent, for the sale of lands, is not responsible for the non-performance of a contract, made by an authorized sub-agent without his knowledge.

Boyd *v.* Vanderkemp.

But the principal is in law chargeable with notice of a contract, duly made by a sub-agent, whom the general agent has appointed under an authority given to him, for that purpose, by such principal.

A vice chancellor has no power to grant a re-hearing, unless it is applied for within six months after the entry of the decree; and before the same has been enrolled.

A bill of review must be brought within the time allowed by law for appealing from the decree.

After a bill had been regularly taken as confessed, for more than nine years, and after a regular decree had been made, against all the defendants, for more than five years, *Held,* that it was too late for a part of such defendants to apply to be let in to answer the bill, and set up a meritorious defence.

Where an appeal has been dismissed by consent of the appellant, an order of the court reinstating such appeal, will not be made for the exclusive benefit of parties who did not join in the appeal.

An appellant whose appeal has been dismissed by the consent of his counsel, has no right to have it reinstated, after the costs of such dismissal have been paid; especially after his discharge under the bankrupt act has left him without interest in the subject matter of such appeal.

It is irregular to make an execution returnable on Sunday. But in general the court will permit process thus defective to be amended, in order to promote the purposes of justice.

An execution cannot issue against a party who has been discharged under the bankrupt act, and whose discharge is a bar to the collection of the damages directed to be paid by a decree which was made before the proceedings in bankruptcy were instituted; although the amount of such damages had not been liquidated, by the master, at the time of the discharge of the bankrupt.

Where a decree is made, directing the defendants to pay the damages which the complainant has sustained by reason of the non-performance of an agreement by them, and directing a reference to a master to ascertain and report the amount of such damages, such damages constitute a present debt, payable when the amount thereof shall be liquidated by the master. And, under the bankrupt law of 1841, such debt is provable, against the estate of one of the defendants who has been declared a bankrupt.

Where an execution was set aside for irregularity, the court directed that the defendants should not be permitted to bring an action against the complainant, or his solicitor, for any thing done under it.

Mode of computing damages, in a suit for the specific performance of a contract for the sale of real estate, or for compensation in damages, under a decree directing a master to ascertain and report the damages which the vendee sustained by the refusal of the vendor to complete the sale.

Where a defendant has been discharged under the bankrupt act, subsequent to the decree against him, for a debt which is provable under the act, it is irregular for the complainant to take out an execution, against the defendant, upon such decree; without a previous application to the court for leave to issue such execution.

Boyd *v.* Vanderkemp.

THIS was an application, by the defendants in this cause, to the chancellor for relief, under the following circumstances; the office of vice chancellor of the sixth circuit being vacant at the time of such application. In January, 1833, the complainant filed his bill in this cause before the chancellor, against Vanderkemp, Evans and Schermerhorn. That bill stated, in substance, that the defendant Vanderkemp was the owner of 150 acres of the east part of lot number two of Morris' Reserve, then in the possession of T. Younglove, and called the Younglove farm; that in January, 1829, the complainant purchased the premises, from W. S. Wood, the sub-agent under the defendant Evans, who was the duly authorized general agent of the defendant Vanderkemp, at the price of $2 per acre; five per cent to be paid down, and the residue in eight equal annual instalments; the first instalment to be paid in three years with interest from the last mentioned period; and that upon payment of the purchase money, Vanderkemp was to convey to the complainant, the premises with warranty; that at the time of such purchase the complainant paid to Wood the five per cent and executed a contract to pay the balance in the usual form of contracts used by Evans as such agent; but as the number of the lot was not then recellected, the description of the lot was left blank, to be filled up by Wood; who agreed that, as soon as he returned to Batavia, he would procure the contract to be made out and executed by Evans, as the agent of Vanderkemp, and sent to the complainant, or left at the land office, at Batavia, for him; that Wood returned to Batavia immediately after making of the contract, and the complainant took the *control* of the premises, his father-in-law, who was previously in possession, continuing in possession under him; and that within one year thereafter, the complainant removed on to the premises, and had continued in possession thereof up to the time of filing his bill in this cause, and making improvements from the time he went into possession; that in January, 1830, not having received the contract, he went to the land office at Batavia, and finding Evans absent, he learned from a clerk in the office that the five per cent had been paid in by Wood, but that no

contract had been made out for the premises, and he then, at the suggestion of the clerk, executed a contract on his part, and left it to be executed by Evans on his return; that he again called at the land office, in October, 1831, and again found that Evans was absent, and was then told by another clerk, that the five per cent had not been paid into the office, and that Wood had no authority to sell lands, or to make contracts for such sale; that he shortly afterwards wrote to Evans on the subject, and received in reply a letter from J. Lowber, purporting to have been written for Evans, acknowledging that $15 was credited to the complainant upon the books of the office, and that the same was subject to his order, but that a large tract of land, embracing the premises in question, had been sold to the defendant Schermerhorn. The bill further stated, that the complainant had heard of the purchase by Schermerhorn, before his visit to Batavia, in October, 1831; and averred that it had been so purchased, and that a conveyance thereof had been given to Schermerhorn, by the vendor, but that Schermerhorn had notice of the complainant's rights in the premises previous to such purchase; that as soon as the complainant heard of such purchase, he gave notice of his rights to Schermerhorn, and requested a compliance with the terms of the agreement so made by Wood, and that Schermerhorn refused to comply with the same. The bill further charged, among other things, that Wood was duly authorized to make the agreement with the complainant on behalf of the defendant Vanderkemp, and that such agreement was binding upon Vanderkemp and Evans, and was in equity binding upon Schermerhorn as such purchaser. The complainant therefore prayed that the defendants, or such of them as to the court should seem meet, might be decreed to give a contract or covenant for a deed to him for the premises, upon the terms and conditions agreed upon between him and Wood; or that they might be compelled to indemnify or compensate him for the damages he had sustained, or might sustain by reason of their non-compliance with such agreement; and that he might have such other and further relief, as the nature of his case required.

Boyd *v.* Vanderkemp.

The subpœna was personally served on Evans and Scher-merhorn, and the defendant Vanderkemp authorized his attorney to admit due service thereon for him, he being a resident of Philadelphia. Schermerhorn appeared by F. M. Haight as his solicitor, and the defendants Evans and Vanderkemp by D. H. Chandler. A copy of the bill and notice of the order to answer, was served upon the solicitor for the two last named defendants, on the 15th of June, 1836. But as an arrangement had before that time been made between these defendants and Schermer-horn, that he should defend the suit for them as well as for himself, and they had instructed their solicitor accordingly, such solicitor took no notice of the bill and order served upon him; and an order was thereupon duly entered, on the 18th of August, 1836, taking the bill as confessed against Vanderkemp and Evans, for want of an answer. The bill was not sworn to, and an answer on oath was waived. After some negotiations be-tween the complainant and Schermerhorn for a compromise, the latter offering to give the complainant a contract for the land upon the terms of Wood's alleged agreement, Schermerhorn put in his answer, denying the authority of Wood to make the al-leged contract, but admitting that he was informed of the com-plainant's claim previous to the conveyance to him of the premises; though he was also informed, by Evans, the agent of Vanderkemp, that the complainant had no legal or equitable right to the land. The answer also stated the proposition to give the complainant a contract, as a compromise, upon the terms and conditions mentioned in Wood's agreement, as stated in the bill, although the complainant had not paid, or offered to pay, the first annual instalment, which had become due pre-vious to the filing of the bill; and that such offer was declined unless he would pay the complainant's costs, and give him a new contract, dated four years subsequent to the alleged agree-ment, and upon the same terms specified in that agreement. The defendant Schermerhorn also, in his answer, renewed the offer to comply with the terms of the alleged agreement made by Wood, upon the complainant's paying what was then due, according to the conditions of that agreement, and paying the

costs to which Schermerhorn had been put, subsequent to his previous offer.  A replication to this answer was filed, and testimony was taken in the cause as between the complainant and Schermerhorn, and the defendant Evans was examined as a witness for the latter under an order of the court.  He testified, in substance, that he sent Wood with contracts executed by himself as agent for Vanderkemp, leaving the descriptions of the lands, the names of the purchasers, and the amount of the purchase money in blank, for the purpose of giving such contracts to certain settlers upon the land under previous contracts made by them with one Taylor, and for the same premises specified in their previous contracts respectively, at the price of two dollars per acre; with authority to fill up the blanks in such contracts and deliver them to such of those settlers as should accept and execute the same; and that the said Wood had no authority whatever to make, or agree to make, any contract for the sale of the lands in any other way or manner; that no contract was entered into by Wood and the complainant, to the knowledge of the witness, though it appeared from the books of the office that $15 was paid by the complainant to Wood, and was credited to him; that five contracts were entered into by Wood, and delivered in pursuance of his instructions; and that on the 26th day of January, 1829, Wood wrote to the witness, that, contrary to his expectations, there were but few prepared to take contracts; and, notwithstanding the timely notice given them, but five appeared and executed contracts; that no other persons manifested a desire to avail themselves of the opportunity, except one gentleman who was confined to his bed by indisposition, and sent his son-in-law, H. W. Boyd, to take a contract for him; but having learned that neither could accurately decide what part of the lot they wanted, he, Wood, deferred the business until they should furnish a survey of the land; which met their approbation, and that they promised to get the survey as soon as possible.  The witness further stated that Wood had left the state, and then resided at Green Bay; and that the clerk, who subsequently filled up a contract, in the absence of the witness, to be executed by him on his return, had

Boyd *v.* Vanderkemp.

no authority to make contracts; and the witness never heard of the contract which was thus filled up, until after the sale and conveyance of the land to the defendant Schermerhorn.   The complainant proved the making of the agreement by Wood, substantially as stated in the bill; but he introduced no testimony showing that Wood had any authority to contract as agent or as sub-agent, for Vanderkemp, other than in the manner stated by Evans.

The cause was afterwards referred to the late vice chancellor of the sixth circuit for hearing and decision; and was argued before him, by counsel on the part of the complainant, and of the defendant Schermerhorn only; no one appearing on the part of the defendants Evans and Vanderkemp.   And on the 25th of April, 1839, the vice chancellor made a final decree in the cause; by which he ordered and decreed that the complainant, recover from all of the defendants jointly, the amount of the damages sustained by the complainant by reason that they had refused to complete, on their part, the sale made to him by Wood, as the agent of Evans, of the premises in question, as stated in the bill; that it be referred to a master to ascertain and report the amount of such damages; that upon the coming in, and confirmation of the master's report, the defendants should pay the amount of damage so ascertained, with costs; and that the complainant have execution thereof. :

On the sixth of May, 1839, the complainant's solicitor took out a summons, before Master Campbell, of Bath, to proceed before him, upon the reference, on the 30th of that month; which summons was served on D. H. Chandler, as the solicitor of the defendants Evans and Vanderkemp, on the 10th of May.   He admitted due service on the back of such summons, on that day, and added thereto a note, directed to the complainant's solicitor, and subscribed by himself as solicitor for those two defendants, as follows: "You need not serve on me any further papers in this cause.  I waive the service of them."   Previous to the return day of that summons, the defendant Schermerhorn appealed to the chancellor, from this decree of the vice chancellor.   Before any argument of that appeal, Schermerhorn applied for a dis-

charge under the bankrupt law of the United States; and was finally discharged from all his debts, in July, 1843. The cause was noticed for hearing on the appeal for the January term, 1845, and the defendant Schermerhorn thereupon gave notice of the presenting of a petition, at the same time, for an order allowing him to plead his discharge, under the bankrupt act, in bar of any personal claim which the complainant might make against him in this suit; or for such other relief as he might be entitled to. Upon the hearing of that application, the chancellor suggested, that as the discharge in bankruptcy was subsequent to the final decree, it was unnecessary to · plead the discharge upon the appeal, as it would not affect the question of costs upon the appeal; and that if the appeal was dismissed, the discharge would be a bar to further proceedings to collect the debt decreed to be paid by the vice chancellor. The counsel for Schermerhorn assented to that course, and an order was directed to be entered dismissing the appeal with costs; including the costs of opposing the petition. This order was drawn up, and settled by the counsel for the complainant and of Schermerhorn, but was not in fact entered; but the costs were subsequently taxed, and were paid to the complainant's solicitor.

The complainant afterwards proceeded in the reference before the master *ex parte*; no person attending on behalf of either of the defendants. And on the 25th of April, 1845, he obtained a report for $3,250, for the damages which he had sustained by reason of the refusal of the defendants to complete the sale mentioned in the decree, *including reasonable rent for the use and occupation of the premises to the date of such report.* The report was filed, and an order nisi entered to confirm the same, on the 8th of May; and the costs were subsequently taxed in the suit before the vice chancellor at $214,35; and the decree was duly enrolled and docketed. On the 21st of May, 1845, the complainant caused an execution to be issued against all the defendants, to the sheriff of the county of Genesee, for the amount of damages reported by the master, and the taxed costs; which execution was made returnable on the 15th of June thereafter, which was Sunday.

Boyd *v* Vanderkemp.

The defendants, upon a petition and affidavits setting forth these facts, and that the defendants Evans and Vanderkemp were ignorant of the decree and subsequent proceedings until after the issuing of the execution; that they had relied upon the agreement of Schermerhorn to defend the suit for them, as well as for himself; that they were advised that the decree was erroneous; and that the appeal had been dismissed without the knowledge or consent of the defendant Schermerhorn; and upon affidavits showing that the damages as reported by the master, were extravagant and enormously excessive, moved that the reference to the master might be opened; that his report and the order confirming the same might be set aside, and a new reference had in the premises; or that the appeal of Schermerhorn might be reinstated; or that the defendants Evans and Vanderkemp might be authorized and permitted to put in an answer to the complainant's bill, and to take proofs thereon; that the execution and all proceedings thereon might be set aside; and that the petitioners might have such further or such other relief as the nature and circumstances of the case might require.

*D. H. Chandler*, for defendants.   I.  The bill does not make such a case as to entitle the complainant to a decree, although it was taken as confessed.   The bill alleges an agreement by parol for the purchase; which was to be reduced to writing. The bill does not allege who were to have been the parties to that agreement in writing, or who should have executed it for the vendee.   The bill does allege that the oral agreement was *reduced to writing and completed in all particulars*, except as to the number of the lot; that complainant authorized Wood to complete it by making the necessary addition; and that Wood assumed to do it.   The oral agreement was merged *in the written agreement, and superseded it*; and hence the written one was all that could be enforced.   The bill does not allege any performance of the agreement by the complainant, beyond the payment of $15, at the time it is alleged to have been made; although before the bill was filed other payments of interest had

fallen due and were unpaid. Neither does the bill contain any offer to perform. A performance, or at least an offer to perform, was necessary. (*See* 7 *Monr. Rep.* 142; *Id.* 656; 3 *Litt. Rep.* 292; *Litt. Sel. Cas.* 129, 453; 1 *McCord's Ch. Rep.* 39; 1 *A. K. Marsh.* 43, 451; 5 *John. Ch. Rep.* 193.)

Evans is made a party, and a decree prayed against him, yet the bill admits him to have been but a bare agent of Vanderkemp. It does not charge him with having exceeded his authority, or with having acted fraudulently. Without such allegations he cannot be made liable. (15 *John. Rep.* 1, 44. 9 *Wend.* 68. 4 *Id.* 285. *Hite* v. *Goodman,* 1 *Dev. & Bat.* 364.) No fact is alleged as against Vanderkemp, by which he should be charged with liability, whether Wood had authority from Evans or not; because it is not alleged that he had given authority to Evans to substitute another to do an act which he was authorized to perform. No statement is made in the bill of the nature and character of the authority delegated to Evans by Vanderkemp, or of the nature or character of the authority conferred by Evans on Wood. Nor, under the general and vague statements in the bill, is there any proof made or offered, of the power or authority of Evans or Wood to act in the premises.

The first prayer of the bill, for the execution of the oral agreement by executing a covenant by the defendants to perform the oral agreement, is one unknown to the principles or practice of this court. All that the court could do would be to direct the defendants to execute a deed, under an agreement sufficiently established; giving the complainant his rights at once.

The act of sale and conveyance by Vanderkemp to Schermerhorn was, per se, a rescision of the pretended agreement with the complainant, and having performed his part of the agreement, as the obligations thereof bound him, the complainant's right to legal or equitable redress was as perfect then as it ever could have been. And he was then, if ever, entitled to a deed, and should have sought that redress. The whole basis of the bill is for a specific performance of the alleged oral agreement. For what other cause, and in what sense aside from that, was Schermerhorn made a party? But having shown all the parties capable

of submitting to such decree as he asked for in that particular, the complainant has taken one of a very different nature. The bill on its face was framed for a purpose which this court could have entertained, but with the covert intention of turning it to another account. If the prayer of the bill could not have justified a decree for a specific performance, the prayer for compensation must fall, and no decree could properly be made under it. The court will not retain a bill for assessing damages, unless the party complainant shows himself entitled to a specific performance. The only claim to jurisdiction arises from that right.

In this case, by the proofs made, (though the bill evades the point, but not artfully,) time was of the essence of the agreement, yet no performance is alleged, in or out of time; nor even an offer to perform. This was necessary. (*See Benedict* v. *Lynch*, 1 *John. Ch. Rep.* 370.) By the showing of the bill there was a rescision of the agreement long before the bill was filed; and that was known to complainant. Equity will not, in such a case, retain the bill to assess damages; but will leave the party to his remedy at law. (*Kempshall* v. *Stern*, 5 *John. Ch. Rep.* 193.) The bill is framed upon the idea that the oral contract was part performed by the payment of the $15, and by the possession and occupancy by complainant. So far as posssesion makes a part performance, the bill does not allege any stipulation for taking it, otherwise than that it was inferred from the agreement. And the statement of the agreement does not allege that any such stipulation was made.

The general prayer for relief is bad. It is " *and* for such other and further relief," instead of being in the disjunctive.

For the defects above stated, the bill was demurrable, and would probably have been dismissed had a demurrer been interposed.

II. By the proofs taken by the complainant he has deprived himself of any right to a decree; and he is bound by the proofs made by himself, although the bill was taken as confessed as against Vanderkemp and Evans. By the proofs the agreement is shown to be different from that stated in the bill. Its provisions were mutual and dependant. The interest upon the purchase money

Boyd v. Vanderkemp.

was payable annually; and the conveyance was made to depend upon the performance by the complainant. Again; he proves by McGee that a written contract was filled up, which had been executed in blank by Evans, corresponding with the Pixley contract, and was then executed by the complainant, and the payment made by the complainant was endorsed by Wood upon it. This proves that no oral agreement was made, or could be made, to rest in parol, and that the complainant and Wood merged it in the written agreement which was executed and treated as *the* agreement. But this proof shows more. It proves Wood's authority to have been special and limited, and that he had no power to make an oral agreement which should bind his principal. For this cause the bill should have been dismissed No notice of the hearing before the vice chancellor was given to the solicitor for Vanderkemp and Evans. They were entitled to notice. (*Hart v. Small*, 4 *Paige*, 551.) The decree of the vice chancellor should have been for a specific performance of the oral agreement, if for any thing; provided the parties were in a condition to comply with it. All the defendants were in a condition to execute and deliver a covenant for a deed corresponding with the alleged agreement with Wood. Schermerhorn is not shown to have parted with the title, and he could have conveyed, if under the bill such a decree could have been pronounced. And the defendants Evans and Vanderkemp might have been decreed to join with him in such conveyance. The decree for damages was therefore extravagantly erroneous. The taking of the bill as confessed as against Evans and Vanderkemp did not subject them to a decree, unless upon an inspection of the bill and proofs a case was made entitling the complainant to a decree. The court was bound to have exercised its judicial vigilance, and a sound judicial judgment, before making a decree against them; and finding that they were not obnoxious to a decree, should have dismissed the bill as against them with costs. (*Rose v. Woodworth*, 4 *John. Ch. Rep.* 547. *Geary* v. *Sheridan*, 8 *Ves.* 192. *Barret* v. *Burmingham, Irish Eq. Rep.* 417. *Landon* v. *Ready*, 1 *Sim. & Stu.* 44.) A cause may be reheard, where a decree has been made upon the bill taken as confessed.

Boyd *v.* Vanderkemp.

( *Tooke* v. *Clark,* 1 *Dick. Rep.* 350.   1 *Barb. Ch. Pr.* 353, 370.)
Taking the bill pro confesso does not amount to an admission
of any fact not stated in the bill, nor of legal deductions.   (*Cor-
neal's heirs* v. *Day,* 2 *Litt. Rep.* 397.)   The appeal taken by
Schermerhorn not having been regularly dismissed, and he never
having authorized that measure, it ought to be adjudged as still
depending, when a great equity is to be subserved by it.   If re-
tained, it will carry with it the decree against Evans and Van-
derkemp.   It is a joint decree against all, and must be executed
as against all, or not at all.   Although the bill was taken as
confessed as against Evans and Vanderkemp, yet there was not
enough of legal elements stated or to be confessed to entitle the
complainant to a decree of any kind.   This court has the power
to open the decree and to relieve the aggrieved parties when
injustice has been done.   It will exercise this power after a de-
cree, when the aggrieved party, either through mistake or acci-
dent, or by the negligence of his solicitor, has not been heard.
(*Millspaugh* v. *McBride,* 7 *Paige,* 509.)   Here is surprise,
mistake and misapprehension.

The master's report is erroneous.   No summons was served
or received.   The report does not state how much was allowed
for damages, for the non-performance of the agreement, or how
much for a reasonable rent for the use and occupation of the prem-
ises to the date of the report.   This should have been done.   It is
obvious enough that he allowed $1500 for damages, being the
whole value of the premises, and 14 years rent at $125 a year,
$1750 ; making together $3250.   The true principle of allow-
ance should have been as follows.   The complainant should
have been allowed for the improvements of a permanent nature
made on the premises, from the time he took actual possession,
under the supposition that he was to have had the land under
his alleged agreement with Wood.   Possibly he was entitled to
interest on that sum up to the date of the report.   But there
should have been deducted from the aggregate of these sums,
with interest, the use and occupation of the premises from the
time he occupied them until he quit possession.   He was entitled
to no pay for improvements made on the premises after the re-

scision of the agreement by the conveyance to Schermerhorn, because any such, if made, was in bad faith—this was in the fall of 1831, as stated in the bill. The complainant was not entitled to any allowance for improvements made upon the premises by Younglove. He has not alleged in his bill that he was in any way entitled to the value of those improvements. They cost him nothing, and therefore on that account he had no claim to compensation as against the defendants. The execution issued in pursuance of the decree is void. It is returnable on Sunday. By the common law Sunday is *dies non juridicus.* (6 *Mod.* 252. 12 *John.* 178.) The chancellor has determined it to be irregular at least, if not void, both by his rules and in his reported cases. (*See Rule* 19 ; *Gould* v. *Spencer*, 5 *Paige*, 543.)

If Evans had the power to substitute Wood, Wood's acts bound Vanderkemp ; and Evans was under no responsibility whatever ; and upon the hypothesis of the bill, he was wholly exempt, and owed no duty to the complainant.

This court does not enforce a contract specifically unless its terms, as set out in the bill, are clear, definite and positive. (*Kendall* v. *Almy*, 2 *Sumner*, 278.) And to entitle himself to a specific performance of a contract, a party must show that he has been always ready to perform on his part. (*Idem.*) The bill should have alleged specially the damages the complainant has sustained, and in what they specially consist. (*Doar* v. *Gibbes et al.* 1 *Bailey's Eq. Rep.* 371.) This is not alleged in the present bill.

*Julius Rhoades*, for the complainant.

THE CHANCELLOR. The decree in this case was unquestionably erroneous, not only as to the defendant Schermerhorn, upon the pleadings and proofs, but also as to the other defendants ; even upon the facts stated in the bill, which was taken as confessed as to them. The answer of Schermerhorn admitted that he purchased after he had been informed, through his agent, of the complainant's claim. If the vice chancellor, therefore, considered the allegations proved, he should, instead of de-

Boyd v. Vanderkemp.

creeing a compensation in damages to the complainant, have decreed a specific performance of the contract by Schermerhorn, in whom the title to the land was then vested; so as to give the complainant the land itself, with the improvements, if any, which he had made thereon, upon his paying the contract price, with the interest thereon, according to the terms of the alleged contract made with Wood. And in that case also, it might have been proper to decree costs against the defendants Schermerhorn and Vanderkemp. The complainant, however, was not entitled to any decree whatever against Evans, who was improperly made a defendant; even upon the complainant's own showing. The bill does not allege that Evans had any interest in the controversy; or that he had done any act whatever, as agent, which was fraudulent or inequitable; or that he even knew of the agreement alleged to have been made by Wood, as the sub-agent, until after the premises in question, with other lands belonging to Vanderkemp, his principal, had been conveyed to the defendant Schermerhorn. Upon the bill taken as confessed, it must be taken to be true, as stated therein, that Wood was a sub-agent, duly employed under Evans as the general agent of Vanderkemp. If so, Evans is not responsible for the non-performance of a contract made by the sub-agent, and of which he was ignorant; although Vanderkemp, the principal, is in law chargeable with notice of the contract, duly made by his sub-agent whom his general agent had authority to appoint and had so appointed. The bill, therefore, did not entitle the complainant to any relief against Evans, nor even to a decree for costs against him; although Evans had suffered such bill to be taken as confessed for want of an answer.

As an answer on oath was waived, the defendants Vanderkemp and Evans probably supposed the solicitor for Schermerhorn could put in an answer for them, and make a defence for all, as he had agreed to do. Their solicitor, therefore, took no notice of the papers, which appear to have been regularly served upon him, from time to time, down to the 10th of May, 1839, when he waived the service of any other papers in the cause upon him. By relying upon Schermerhorn, to put in an answer for them as well as for himself, and neglecting to have

his solicitor substituted in place of Chandler, they have remained in ignorance of the proceedings in the cause, and have lost the opportunity of denying the authority of Wood to make the alleged agreement as sub-agent. They have also lost the right of appealing from the erroneous decree of the vice chancellor. The decree of the 25th of April, 1839, being a final decree in the cause, the time for appealing therefrom is limited, by the statute, to six months from the time of the entry of such decree. (1 *R. S.* 178, § 65.) The rules of the court prohibit a vice chancellor from granting a rehearing, unless it is applied for within six months after the entry of the decree, and before the same has been enrolled. And a bill of review must be brought within the time allowed by law for appealing from the decree. (*Thomas* v. *Harvie,* 10 *Wheat. Rep.* 146. *Welf. Eq. Pl.* 231. *Rule* 173.) It is also too late for these two defendants to be let in to answer a bill which had been regularly taken as confessed nine years since; and after a regular decree has been made against them on such bill, and upon pleadings and proofs as to their co-defendant. Nor would reinstating the appeal of Schermerhorn probably aid *them,* as they had not joined in that appeal; and the decree, as to them, is therefore final and conclusive. The defendant Schermerhorn has himself no equitable claim to have the appeal reinstated, after his counsel have consented to have it dismissed, and the costs of such dismissal have been paid; especially as his discharge under the bankrupt act is a bar to any claims against him upon this personal decree. And his assignee in bankruptcy may be a necessary party to the proceedings, if the decree is to be modified so as to make it a decree for a specific performance of the contract to convey the land itself.

The proceedings before the master were regular, although the order dismissing the appeal had not been actually entered. For the appeal bond was only for costs, and did not therefore stay the proceedings upon a final decree. The execution, however, was irregular; not only because it was made returnable on the sabbath, but also because it was issued against Schermerhorn, who had been discharged under the bankrupt act; as well as against the other defendants who were still liable upon the final decree of

April, 1839.  In *Gould* v. *Spencer*, (5 *Paige's Rep.* 541,) this court decided that it was irregular to make any process returnable on the sabbath.  That, however, is a mere technical objection ; and, in an ordinary case, the court would permit an amendment of the process, to promote the purposes of justice.

In regard to Schermerhorn, however, the execution is erroneous in substance.  For his discharge under the bankrupt act was a bar to the recovery of the damages recoverable under the decree, although the amount of such damages was unliquidated at the time of his discharge.  By the decree of the vice chancellor the amount of damages, which the complainant was decreed to be entitled to in consequence of the non-performance of the alleged agreement made by Wood with him, became a present debt ; payable when the amount thereof should be liquidated by the master.  It was therefore a debt which was provable against Schermerhorn's estate, under the provisions of the bankrupt law of 1841.  Under the English bankrupt laws, previous to May, 1825, debts depending upon a contingency, except such as arose upon bottomry or respondentia bonds or upon policies of insurance, which were provided for as early as the 19th of George the 2d, could not be proved under a commission in bankruptcy taken out before the happening of the contingency upon which the debt was payable.  (*Cooke's Bank. Law*, 141.)  There was also a class of debts, for uncertain and unliquidated damages, arising upon contracts, which could not be proved under a commission taken out before the amounts of such debts were ascertained.  (1 *Deac. Law of Bank.* 280.)  The 56th section of the act of May, 1825, to amend the laws relative to bankrupts, covered all cases of mere contingent debts.  But the case of *uncertain* debts arising from breaches of contracts, where the amount of damages was unascertained, and could not be computed so as to be sworn to as debts, were left still unprovided for.  (*See Henley's Bank. Law*, 132.)  The 5th section of the United States bankruptcy law of 1841, however, provides in express terms, that all creditors whose debts are not due and payable until a future day ; all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurance, sureties,

Vol. I.                    37

---

Boyd *v.* Vanderkemp.

---

endorsers, bail, or other persons having *uncertain* or contingent demands against the bankrupt, shall be permitted to come in and prove such debts or claims under the act. And the preceding section makes the certificate a full and complete discharge, of all debts which are thus provable; with the exceptions in the cases of fraud, misconduct, or misapplication of trust funds in that section mentioned. The execution must therefore be set aside as irregular, against all of the defendants, and as wholly unauthorized as to one of them. But neither of such defendants is to be permitted to bring an action against the complainant, or his solicitor, for any thing done under such execution.

The petitioners are also entitled to relief in relation to the amount of damages reported due by the master. It is evident, from the affidavits and testimony before me, that the estimate of the value of the property, made by some of the witnesses upon the reference, was exaggerated and extravagant. The report also shows that the master must have adopted an erroneous rule of damages; as he has included therein an allowance, to the complainant, for the rent of the premises, down to the date of his report, in 1845. All that the complainant was entitled to recover, as damages for the non-performance of the alleged agreement, was the value of the premises and improvements thereon at the time of filing his bill, on the 7th of January, 1833, when he alleges he was in possession; after deducting therefrom the purchase money agreed to be paid, but which had not in fact been paid, together with the interest on such purchase money up to that time according to the terms of the agreement. And upon the amount of damages thus ascertained, the master should compute interest from the 7th of January, 1833, up to the date of his report.

The report of the master and all subsequent proceedings thereon must therefore be set aside, and the enrolment of the decree must be discharged. It must be referred back to the master to review his report, and to take such further testimony as either of the parties shall think proper to produce before him. And he must be directed to ascertain the damages upon the

principles above stated.   The complainant is to have the bene-
fit of the testimony which was taken before the master when
the case was previously before him; but with liberty to the
defendants to compel the attendance of the witnesses who were
then examined, and to cross-examine them, if the defendants
shall be able to procure such attendance upon subpœna, or
otherwise.   And the order to be entered hereon must further
direct, that upon the coming in and confirmation of the report
of the master, the complainant have execution against the defen-
dants Evans and Vanderkemp, for the amount of the damages
as stated by the master in such amended report, together with
his costs, as directed by the decree of April, 1839; but that no ex-
ecution shall issue against the defendant Schermerhorn, either for
damages or costs.   Due notice of all future proceedings in the
cause, must be given to the solicitor for the defendants Vander-
kemp and Evans; but no summons, or notice, or other proceed-
ings, need hereafter be served on the solicitor of Schermerhorn.

The costs of the complainant are to be re-taxed, after the
coming in and confirmation of the master's report.   And the
complainant is to be permitted to include in his bill all such extra
costs as shall have arisen from the setting aside of the former
report and subsequent proceedings, and the re-investigation of
the case by the master; including the order to confirm the new
report, the enrolment and docketing of the decree, and the re-tax-
ation of costs.   But no allowance is to be made for the execution
which is set aside for irregularity, nor for any proceedings there-
on; and neither party is to tax, or have any costs, as against the
other, upon this application.

The order to be entered hereon, is to be entered with the
clerk of the sixth circuit, as of the 9th of August, 1845; when
the petition was presented to the chancellor, during the vacancy
in the office of vice chancellor of that circuit.