## Case No. 16,160.

### UNITED STATES v. RICO et al.

[Hoff. Dec. 48.]

District Court, N. D. California.   Jan. 25. 1862.

#### MEXICAN LAND GRANT—CONFIRMATION OF CLAIM — CONCLUSIVENESS.

[In a proceeding to correct a survey under the act of 1860, the district court has no jurisdiction to review and reverse the final decree, whereby the genuineness and validity of the claim was established.]

[Claim of Francisco Rico and J. A. Castro to the Rancho del Rio Estanislao, comprising eleven leagues of land in Stanislaus county.   On objections to the survey.]

HOFFMAN, District Judge.   The claim in this case was confirmed by the board, and that decision was affirmed in this court, though not without much doubt as to the genuineness of the title papers.   Case No. 16,161.   An appeal was taken to the supreme court, which was subsequently ordered to be dismissed by the attorney general.   The usual stipulation was thereupon made by the district attorney, and an order entered vacating the order granting an appeal, and allowing the claimants to proceed under the decree of this court as under final decree.   A survey of the land confirmed has accordingly been made, and it was returned into court on the application of the United States, pursuant to the provisions of the act of 1860.   On the return of the survey objections to it were filed, and the parties permitted to take proofs.

The only objection presented on the part of the United States is, that the grant is false and fraudulent, and the signature of the governor and seals upon the papers forgeries.   Proofs in support of this allegation have been taken, and the question is now presented, whether these proofs are admissible, and whether the court has jurisdiction, at this stage of the cause, to reopen it for further proofs, and to review and reverse the decree heretofore rendered.

It may be observed that the proofs offered are of a nature to leave no doubt as to the fraudulent character of the claim, and if the court has jurisdiction to receive them, and decree accordingly, the claim must certainly be rejected.   It must also be mentioned that the present parties in interest are innocent, bona fide purchasers, who paid a large consideration in money after the dismissal of the appeal and the filing of the consent of the district attorney that the claimants might proceed under the decree of this court, as under final decree.

The point is thus presented in the strongest form in which it could arise.   On the one side, an unquestionably fraudulent claim confirmed by a decree of this court, which has become final by express stipulation and consent; and on the other side, the rights of innocent third parties, who have acquired their interests and parted with their money relying on the supposed final adjudication of the court.   Prior to the

decision of the supreme court in the case of U. S. v. Fossatt [21 How. (62 U. S.) 445], it had been supposed, both by the bench and the bar, that the jurisdiction of this court was limited to deciding on the validity of claims, together with such questions, as to extent and boundary, as might be incidentally presented; but that the location and survey were to be determined by the surveyor general, under the instructions of the proper executive department of the government. In the case referred to, it was decided by the supreme court that this court has the power to direct a survey to be made, and to review and correct the surveys of the surveyor general, made in pursuance of its decree; and the court declares that "the jurisdiction of the district court over the cause does not terminate until the issuance of a patent conformably to its decree." U. S. v. Fossatt, 21 How. [62 U. S.] 450.

It is contended that the supreme court have, by this declaration, in effect affirmed the jurisdiction of the district court over the whole cause until the patent is issued, and that it has power at any time prior thereto to re-open it for proofs on a proper showing, and to review and reverse the decree it may have previously entered. But such I do not consider to be the true construction of the language of the supreme court.

1. The doctrine enunciated by the supreme court, though it embraced in general terms all cases, must have more especially referred to the case before them. If, then, the construction of their language contended for be wholly inadmissible with respect to the case under consideration, it follows that it would be equally inadmissible with reference to other cases. The claim of Fossatt had already been finally passed upon by the supreme court. By its decree, delivered at a previous term, it had been adjudged to be valid to the extent of one league, to be taken at the election of the grantee or his assigns, within the southern, eastern, and western boundaries mentioned in the grant, and this court was directed to declare those boundaries. The boundaries within which the league was to be taken were accordingly declared by this court, but no survey was made and approved, nor was the precise location of the league fixed by its decree. On appeal, the supreme court held that the decree of this court declaring the three external boundaries of the tract within which the league was to be taken was not a final decree, but that the league be surveyed and located by the surveyor general, under the direction of the court. In answer to the objection that this court had no means of ascertaining the specific boundaries of the confirmed claim, and no power to enforce the execution of its decree, the supreme court observed, in effect, that the court had power to enforce the execution of its decree by the surveyor general, and added that its jurisdiction over the cause did not terminate until the issuance of a patent conformably to its decree.

It will be perceived that the principle thus laid down referred exclusively to the jurisdiction of the court to enforce a decree admitted to be final; and it merely affirmed its right to take such further proceedings to secure the due execution of its decree as might be necessary. But it could not have been intended to declare that in that case this court would have had the authority to reopen the cause and to take further proofs as to the validity of the grant, or the extent of the granted land, and to reverse the solemn adjudication of the supreme court by which those questions had been finally determined. If then, the language of the supreme court cannot be interpreted, as is claimed, with reference to the case before it, neither can it be so interpreted with reference to other cases.

It is urged that the fact that this court has jurisdiction, after decree and survey, to correct the latter, proves that the whole cause remains sub judice until patent issued, that the decree is therefore not a final decree, but that it may be vacated or modified, on a proper showing such as would authorize the granting of a re-hearing, or have to file a bill of review, and that the purchasers from the confirmee are bound by the rules applicable to all purchasers pendente lite. It has already been shown that the supreme court could not, in the passage referred to, have intended to declare that its own adjudication could be reversed by this court, and that therefore the power over the cause. which was held not to terminate until the issuance of the patent, must be taken to mean not the power over the whole cause, including every question of validity and authenticity already determined by that court or the supreme court, but power to enforce the execution of the decree, and to control and modify the action of the surveyor general under it.

That the decree of this court, affirming the validity and extent of the claim, is a final decree, is evident from the fact that every appeal which has yet been taken to the supreme court, and passed upon without objection, has been from such a decree. It is therefore too late to say that those decrees were not final at least in the sense of being appealable. Again, the surveyor is, by law, authorized to survey claims which have been "finally confirmed." Unless, then, the decree confirming the claim be a final decree or confirmation, no survey can regularly be made, and yet until a location be made, and the lines run, the court is without the means of making any other decree than the general decree of confirmation. It is plain, therefore, that this decree is regarded by the law as the final decree of confirmation under which the survey is to be made, and this is evidently the view of the supreme court, as explained in the case of Hendricks v. Castro, 23 How. [64 U. S.] 442. In that case it is stated that "though in the Case of Fossatt it was held that if questions of

a judicial nature arose in the settlement of the location and boundaries of grants the district court was empowered to settle those questions upon a proper case, submitted to it before the issue of a patent, yet that it was not expected that the surveyor would make returns to the district court in every instance, nor was it implied that the validity of a survey depended on the recognition of that court or its incorporation into a decree of the court."

From these observations it is clear that the interposition of this court may be invoked in a proper case to arrest a location by the surveyor general in its final decree, yet its interposition is not in every case necessary; that the survey is valid if not objected to, and the decree of the court remains not only its final decree, in a technical sense, but its last act in connection with the clause. Again, the proceeding by which this survey has been brought into court has been taken under the provisions of the act of 1860, by which the power of this court to correct surveys as declared by the supreme court to exist, was regulated and defined. By the provision of this act only those surveys made by the surveyor, under the provisions of the thirteenth section of the act of 1851, can be ordered to be returned, and these surveys must be, as has been already remarked, of lands finally confirmed. The fourth section provides that on the return of the survey evidence may be taken as to any matters necessary to show the true and proper location of the claim; and the court is authorized to approve the survey, or to correct and modify it, and the surveyor to cause a new survey to be made in obedience to the direction of the court. It is clear that this act in no manner authorizes or contemplates the introduction of evidence as to any matters except those necessary to show the true location of the claim which has been confirmed, and the power of the court is limited to making a decision upon the correctness of the survey, and giving the proper instruction to the surveyor. All testimony, therefore, relating to the validity and authenticity of the claim, is, in a proceeding under the act of 1860, clearly inadmissible. If, then, the meaning of the supreme court in the passage cited from its opinion in U. S. v. Fossatt were doubtful, the subsequent definition and regulation by statute of the power of the court as to surveys made after final decree must be taken as a restriction of its jurisdiction to the matters specified in the statute, and as a legislative definition of the extent and nature, and mode of exercise, of its power after final decree. But the meaning of the supreme court, as explained by Hendricks and Castro, cannot, I think, be mistaken, and it merely affirms the jurisdiction of this court to enforce the execution of the final decree of confirmation, for the exercise of which the subsequent statute prescribes more precise regulations. The

proceedings under the act of 1860 are, therefore, closely analogous to a bill in equity, filed to enforce the execution of a decree. In such case it is clear that the original decree, though obtained by fraud, cannot be set aside, except by original bill, nor can the fraud be set up on the answer to the bill to enforce it. 16 Cal. 550, 551; Caldwell v. Giles, 1 Riley, Eq. 120 [2 Hill, Eq. 548]; 1 Bland, 120; 4 J. J. Marsh. 497; 1 Sandf. Ch. 103; Daniell, Ch. Prac. 1788; 2 Hill, Eq. 548.

It is conceded that this court has no jurisdiction to entertain a bill of review under the special powers conferred by the statute in this class of cases. But even if it had, and if this was an application for leave to file such a bill, it is not clear that it ought to be granted.

This claim was presented to the board in March, 1853. It was presented to a tribunal instituted for the sole object of ascertaining the validity of claims of the class to which it belonged. The genuineness of the title papers was, of course, the first question to be inquired into. After an investigation extending over a period of more than two years and a half, the board decided that the papers were genuine. The case was appealed to this court, and an opportunity afforded to the United States for further investigations and additional proofs. On the tenth day of November, 1856, more than three and a half years after the appeal, the claim was confirmed in this court, with evident reluctance, and doubt as to the authority of the title papers. It would not be easy to convey a clearer intimation that the case required further investigation than was contained in the opinion of this court. An appeal to the supreme court was taken. It remained pending, for on the 1st April, 1857, the district attorney, under instructions from the attorney general, withdrew the appeal, and formally consented, in writing, that the decree of this court should stand as the final decree of confirmation. It was after the abandonment of the appeal, and the filing of this consent, that the present owners effected their purchase. They are not denied to have been innocent purchasers for a large consideration in value.

The evidence of fraud and forgery which it is now sought to introduce is derived from the archives of the former government. These archives have, since the commencement of the suit, been in the possession of the United States. They would at any time, if carefully examined, have afforded incontrovertible proofs of the true character of this claim. The fact that the seal known as the "Limantour seal" is forged, was proved in court in November, 1857. It was probably discovered sometime previously. It was therefore known to the United States less than six months after the dismissal of the appeal,—nearly five years have elapsed since the decree became final by consent,—

and nearly four years since the spuriousness of the seals was detected.

Under all these circumstances, it may well be doubted whether a court, possessing full equity powers, would suffer a bill of review to be filed. The United States, as a suitor in court, is bound by the rules and principles which determine the rights of individuals. For more than three years and a half, during which this case was pending before the board and the district court, the United States have omitted to present testimony as to the principal points in issue, which a diligent search could have obtained. No new document has been discovered, nor any new evidence suddenly brought to light. A comparison has merely been made between the seals on papers, and those on others admitted to be genuine. Of both the United States was, from the beginning, the appointed custodian. Though apprised by the opinion of this court that the case was open to the gravest suspicions, the United States have, through their appointed agents, formally acknowledged the validity of the claim, and consented that the decree confirming it should be treated as final. Under these circumstances, I think it more than doubtful whether a bill of review could be permitted and a decree obtained, the effect of which would be to divest the title of those who have parted with their money on the faith of the formal acknowledgment of the government that the claim was valid, and the decree of confirmation not only final but just. 12 Johns. 521; 3 Ves. 448; 5 Johns. Ch. 550; Daniell, Ch. Prac. 1726; [Thomas v. Harvie] 10 Wheat. [23 U. S.] 146; Massie v. Graham [Case No. 9,263]; 1 Barb. Ch. 273.

But whatever be the true view to be taken of this question, it is enough to say that in a proceeding to correct a survey, under the act of 1860, this court has no jurisdiction to review and reverse the final decree whereby the genuineness and validity of the claim have been established; and this whether the final decree is that of the board or this court, which has become final by the dismissal of the appeal, or is the decree of the supreme court.

No other objection being made, the survey is approved.