LEWIS & WALLACE v. PECK & CLARK.

1. One attorney confides a note to another for collection, and takes his receipt, but without giving instructions with respect to the ownership. After the money is collected, it is remitted to the payee of the note, whose name however was endorsed on the note. This remittance, the payee not being the owner, will not discharge the collecting attorney from liability to his immediate principal, nor will the action of the latter, for the money, be defeated by proof that he was himself the agent for the indorsee, unless that person has asserted his right to the money as against his agent.

Error to the County Court of Tuskaloosa.

Assumpsit by Lewis & Wallace against Peck & Clark. The declaration contains the common counts only, to which the defendants pleaded the general issue.

Lewis & Wallace v. Peck & Clark.

At the trial the plaintiffs read in evidence a receipt execu-ted by the defendants in these terms, to wit : Rec'd of Lew-is & Wallace, two notes on Lamkin, Gilkey & Co. for collec-tion ; one for $146 26, to the order of Jeremiah Boyd, at twelve months ; the other for $230 02, to the order of Hurst & Mixsell, at twelve months, the first dated September 17, 1835, the second Sept. 21, 1835. These notes received by the hands of Lea & Graham. Tuskaloosa, Dec. 20, 1835.

(Signed,) PECK & CLARK, Att'ys.

The plaintiffs next proved a demand of the money, the proceeds of the note first described in the receipt, previous to the commencement of this suit, and that the money had been collected on that note. They next read the deposition of one Trevor, who deposed, with reference to that note, that he placed in the hands of the plaintiffs for collection, on the 15th June, 1835, it then being his property, having been indorsed to him for a valuable consideration, by Boyd, to whose order it was payable. This witness stated he did not consider himself as having an interest in this suit, as he nev-er had received any consideration from the plaintiffs for the note, and held them accountable for it. The defendants ob-jected to this witness, and read a letter of his to show his in-terest, but which is unnecessary to be set out here, as the deposition was admitted. The plaintiffs also proved the note was indorsed in blank by Boyd, the payee.

The defendants in defence produced a certificate of a de-posit made by one of them, to the credit of Boyd, for $169 05, and proved the money had been paid to the order of Boyd, by the bank. There was no evidence of any contract for the collection of the note other than the receipt in evi-dence. The defendants then read to the jury three letters from the plaintiffs, as follows, to wit :

Messrs. Peck & Clark : Gentlemen—Messrs. Lea & Gra-ham some time ago sent us your receipt for the following claims, (describing the one the subject of controversy, as well as the other covered by the receipt.) We have recent-ly had inquiries made as to these notes, by our clients, and we will thank you to inform us whether the money has been made on them, or is likely to be made. Huntsville, Jan'y 13, 1840.

Messrs. Peck & Clark: Gentl'n—Yours of the 17th inst. is at hand. The note of Lamkin, Gilkey & Co. was sent to us by J. B. Trevor, cash'r of the Phila. Bank. We mean the note to Boyd. We inclosed it to Lea & Graham, expecting them to collect it and remit the money to us, as is our practice. If they had collected it, we would have sent it to the right person. Handing it over to you, you had nothing to guide you but the face of the note as to the ownership of it. In this way the mistake has originated. Trevor has written to us on the subject. His letter is dated 26th Dec'r and up to that time Boyd had not informed him of the receipt of your letter, which *prima facie* is very little to the credit of Boyd. We hope this explains the apparent mistake in the matter. Huntsville, January 25th, 1840.

Messrs. Peck & Clark: Gentlemen—We have just received a letter from J. B. Trevor, of Phila., in answer to ours informing him that you had collected the note of Gilkey & Co. and remitted the proceeds to Boyd, of Norristown, Pa. He informs us that the note belonged to him, and that he had called on Boyd, who says he had a back account against Gilkey & Co, for about the amount of the note, which he gave to a Mr. Henderson for collection, who he presumes handed it over to you, and that the remittance from you, (of which he acknowledged the receipt,) was probably the proceeds of that account; that he considered it such at the time. Boyd is insolvent, and having transferred the note, had no right to give any instructions on the subject. If there is any mistake as to the claim to which the remittance ought to be applied we will be obliged by an immediate explanation of it. An immediate answer is desirable, as Mr. Trevor informs us that Boyd will leave the U. S. this spring, and if any thing can be made out of him, it will be necessary to use very prompt measures. The note is correctly described in your receipt, $146 26, due 17th September, 1836. Huntsville, March 4, 1840.

The defendants then proved by the cashier of the State Bank, and several attorneys, that it was common, when notes and bills were sent out for collection, for the owner to indorse them in blank before they were sent, and that when so indorsed, they paid the money to the last indorser, if sent by

the last indorser. There was no evidence the defendants had any knowledge whatever that the note did not in fact belong to the payee until after it was collected and the proceeds paid to Boyd. The entire evidence is as stated above. On this the court charged the jury, that payment of the money to Boyd, or to Williams & Lewis, was a good defence to the action; and if the jury believed the money was paid to Boyd, they should find for the defendants.

The plaintiffs excepted to this charge, and it is now assigned as error.

PETERS, for plaintiffs in error.

PECK & CLARK, *per se*, insisted—

1. That under the circumstances disclosed in evidence, they were excusable in remitting the funds to Boyd.

2. But if liable at all it is to Trevor, and not to the present plaintiffs, in this form of action. The money when received, was the money of Trevor, and the liability of the plaintiffs to him does not transfer the interest in the money. [Bryant v. Owen, 1 Porter, 209. Fry v. Lockwood, 4 Cow. 454; Gilman v. Pope, 5 Mass. 491; Gunn v. Gantine, 10 John. 398.]

GOLDTHWAITE, J.—The defendants cite Gunn v. Cantine, 10 John. 387, as a strong authority for the principle for which they insist, and it certainly is so, being almost identical in its facts. But that decision seems irreconcilable with well recognized principles, and we are not aware it has elsewhere been held, the plaintiff must have a beneficial interest in the money to be collected when he has possession of the thing contracted for, and the contract is made in his name. Auctioneers, factors, or brokers, may or may not have a beneficial interest, as their contract may be, and yet it has never been decided they may not sue in their own names, unless the principal directs the payment to be made to himself. Williams v. Millington, 1 H. Black. 84, is a leading case on this subject, and there the only Judge who doubted the universality of the rule, rests the right of the agent to bring the action, on his possession of the thing con-

19

tracted about.   Although he concedes the right of the princi-
pal to bring the action if he will, and to prevent the payment
to the agent, yet says the defendant has no right to put an
owner forward to prevent the auctioneer from having his rem-
edy.   We do not doubt that this is the principle which gov-
erns all cases, in which either principal or agent may sue.

The receipt which the defendants executed made them
*quoad* the money in controversy, the agents of the plaintiffs
as they had possession of the note by which it was due, and
which furnished the evidence to collect it.   The true owner
might doubtless intercept it by showing the agency of the
plaintiffs, but until this right is asserted, the defendants are
accountable to their immediate principals.   So too if the mo-
ney was equitably coming to Boyd, it is very possible the
payment to him might be a discharge to the defendants, ex-
cept so far as the plaintiffs had an interest.   Instead of this,
it is clear the note was the property of Trevor, and that the
legal title was invested in him by the indorsement in blank.
Between the defendants and him, there is no privity whatev-
er, until he ratifies the act of the plaintiffs in selecting them
as his attornies.   Until that ratification is made, and his right
to receive the money from them is insisted, they are respon-
sible to the plaintiffs upon the contract to collect the money,
or in other words, in the language of Mr. Justice Wilson, bor-
rowed from the case of Williams v. Millington, they have no
right to put him forward as the owner, to defeat the plain-
tiffs of their remedy.

We do not think it necessary to discuss the case of Bryant
v. Owen, 1 Porter, 201, as, however the reasoning of the de-
cision may support the defendants, the principle decided has
no direct application.   Nor is it requisite to show that the
remittance to Boyd is no discharge of the defendants' liability
to the plaintiffs, as this in effect is abandoned by the parties,
and if not abandoned, cannot be sustained.

We are satisfied the charge of the court below was errone-
ous.   Judgment reversed and cause remanded.