## HOOVER, ASSIGNEE, *v.* WISE ET AL.

An account or money demand having been delivered by its owners to a collection agency with instructions to collect the debt, that agency transmitted the claim to an attorney, who, knowing the insolvency of the debtor, persuaded him to confess judgment. The money collected was transmitted to the collection agency, but never reached the creditors. Proceedings in bankruptcy were instituted against the debtor within four months after such confession, and were prosecuted to a decree. *Held,* that as the attorney was the agent of the collection agency which employed him, and not of the creditors, his knowledge of the insolvency of the debtor was not chargeable to them in such sense as to render them liable to the assignee in bankruptcy for the money collected on the judgment. *Quære,* would they have been so liable had the money reached their hands?

ERROR to the Supreme Court of the State of New York.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Mr. J. H. B. Latrobe* for the plaintiff in error, and *Mr. W. W. Boyce, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

This action is brought by an assignee in bankruptcy to recover back a sum of money collected from the bankrupt after the occurrence of several acts of bankruptcy.

Under the practice of the State of New York the case was referred to a referee, upon whose report judgment was entered at the special term in favor of the plaintiff. From this judgment an appeal was taken by the defendants to the general term.

Upon the hearing at the general term this judgment was reversed, and a new trial was ordered.

When a judgment is reversed, and a new trial ordered, two modes of proceeding are open to the defeated party in the practice of the State of New York. He can accept the terms of

the order, and take a new trial in the court below. If he sup-
poses that he can make a better case upon the facts than is
contained in the report of the referee, this will be his proceed-
ing ; if he can make no improvement in this respect, or if he
is satisfied to risk his case upon the facts as found, he may take
an appeal to the Court of Appeals from the order granting a
new trial. To make this appeal effectual, his notice of appeal
must contain "a consent on the part of the appellant, that, if
the order appealed from be affirmed, judgment absolute shall be
rendered against him." Code, sect. 11. The order for a new
trial thus becomes a final judgment in the case.

The latter course was adopted in the present instance. The
plaintiff appealed to the Court of Appeals, giving the stipulation
required for that purpose. The Court of Appeals affirmed the
judgment of the general term, and remitted the record to the
Supreme Court, that the judgment might be there entered and
enforced. From this judgment, entered upon that *remittitur*,
the present writ of error is brought.

It appears from the record that an account or money demand
was delivered by its owners to Archer & Co., a collecting
agency in the city of New York, and received by them, with
instructions to collect the debt, and with no other instructions;
that this agency transmitted the claim to McLennan & Arch-
bold, a firm of practising lawyers in Nebraska City. Several
acts of bankruptcy had been committed by Oppenheimer when
Mr. McLennan persuaded him to confess judgment for the debt
thus sent to him. Proceedings in bankruptcy were instituted
against Oppenheimer within four months after such confession,
and were prosecuted to a decree of bankruptcy. At the time
of receiving the confession McLennan was well aware of the
insolvency of Oppenheimer, and that the confession was taken
in violation of the provisions of the Bankrupt Act.

The money collected was remitted to the collection agents in
New York from whom he received the claim, but never paid by
them to Wise & Greenbaum, the creditors.

When the debt in question was delivered to the collection
agency in New York, it was so delivered, as testified by one of
its owners, "for collection." "Archer & Co.," he says, "were
collection agents in New York. I gave them no directions

except to try their best to collect it. They told me they would send it out (to Nebraska). I gave no other instructions." " The business of Ledyard, Archer, &. Co. (he says), was to take claims for collection in different parts of the country, and, if necessary, have them sued."

Mr. Archer, of the collection firm, testifies that he received the claim for collection; that he told the defendants, if sent on at once, he thought it could be collected; that the account was verified by one of the defendants, and sent by the witness to Mr. McLennan, a lawyer, at Nebraska City; that he afterwards told the defendants the account had been put in judgment, and that he hoped to make the money, or the greater part of it. When he made this communication he had McLennan's letter in his hand, and communicated it to the defendants. He further testified that the money had been received by him from McLennan, but had never been paid over to Wise & Co.

The referee held that the knowledge of the condition of the bankrupt by the attorneys residing in Nebraska, who took the confession of judgment, was the knowledge of the creditors in New York. The Supreme Court and the Court of Appeals adjudged otherwise, holding them to be the agents of Archer & Co., and not of Wise & Greenbaum, the creditors. It is upon this point of difference that the case is now presented for decision.

The general doctrine, that the knowledge of an agent is the knowledge of the principal, cannot be doubted. *Bk.* v. *Davis*, 2 Hill, 451; *Ingalls* v. *Morgan*, 10 N. Y. 178; *Fulton Bk.* v. *N. Y. & S.*, 4 Paige, 127.

It must, however, be knowledge acquired in the transaction of the business of his principal, or knowledge acquired in a prior transaction then present to his mind, and which could properly be communicated to his principal. *The Distilled Spirits*, 11 Wall. 356; *Weeser* v. *Morgan*, 10 N. Y. 178.

Neither can it be doubted, that, where an agent has power to employ a sub-agent, the acts of the sub-agent, or notice given to him in the transaction of the business, have the same effect as if done or received by the principal. Story on Ag., sects. 452, 454; *Storrs* v. *City of Utica*, 17 N. Y. 104; *Boyd* v. *Vandenberg*, 1 Barb. Ch. 273; *Rourke* v. *Story*, 4 E. D. Smith, 54; *Lincoln* v. *Battle*, 6 Wend. 475.

It is no answer to this liability to say that the act done by the agent was of a fraudulent character, and that the principal did not authorize the commission of a fraud. For a fraud committed by a partner or an agent the principal is not liable criminally; but he is liable in a civil suit if the fraud be committed in the transaction of the very business in which the agent was appointed to act. Story on Ag., sects. 452–54; *Griswold* v. *Haven*, 25 N. Y. 600, 602; 3 Ch. Com. L. 209; *N. R. Bk.* v. *Aymar*, 3 Hill, 262; *Davis* v. *Bemis*, 40 N. Y. 453, n.; *Attorney-General* v. *Sidden*, 1 Cromp. & Jer. 219.

Upon these general principles we find no difficulty. But the real question still remains: Was McLennan of Nebraska the agent and attorney of Wise & Company, the owners of the debt? or were Archer & Co., the collection agents, his principals? and was it to them only, and not to Wise & Co., that he stood in the relation of agent and attorney?

The evidence was uncontradicted in every particular. It became, therefore, as stated in the opinion of the Court of Appeals, a question of law, whether the evidence sustained the findings of the referee.

The rule of law is undoubted, that for the acts of a sub-agent the principal is liable, but that for the acts of the agent of an intermediate independent employer he is not liable. It is difficult to lay down a precise rule which will define the distinctions arising in such cases. The application of the rule is full of embarrassment. For a collection of the cases and illustrations of the doctrine, reference may be had to Story on Agency, sect. 454 and following.

Without attempting to harmonize or to classify the conflicting authorities, we think the case before us falls within a particular range of decisions, in which the preponderance is undoubted.

Among these are the following: —

*In Reeves* v. *The State Bank of Ohio*, 8 Ohio Stat. 465, the case was this: Reeves & Co. deposited for collection, in the Commercial Bank of Toledo, their draft for $500 on Buckingham & Co. of New York. The draft was forwarded to the American Exchange Bank in New York; and on the 21st of November, 1854, it was paid, and the amount credited to the

Commercial Bank. On the 27th of the same month the Commercial Bank became insolvent, and its assets passed into the possession of the State Bank. Reeves & Co. sued the State Bank as the representative of the Commercial Bank, alleging that the latter bank was their agent, and that the money collected in New York for the latter bank on their draft belonged to them. In an elaborate and exhaustive opinion, in which all the cases, English and American, were reviewed, the Supreme Court of Ohio held, among other things, — 1. That the Commercial Bank was responsible to Reeves & Co. for the conduct of the New York bank, and was liable to them for the amount of the draft immediately on its collection in New York. 2. That the New York bank was the agent of the Commercial Bank, and not the sub-agent of Reeves & Co. The action was sustained.

In *Mackay* v. *Ramsay*, 9 Clark & Fin. 818; "M. employed R. & Co., bankers in Edinburgh, to obtain for him payment of a bill drawn on a person resident at Calcutta. R. & Co. accepted the employment, and wrote promising to credit M. with the money when received. R. & Co. transmitted the bill, in the usual course of business, to C. & Co. of London; and by them it was forwarded to India, where it was duly paid. R. & Co. wrote to M., announcing the fact of its payment, but never actually credited him in their books with the amount. The house in India having failed, it was held that R. & Co. were agents of M. to obtain payment of the bill; that, payment having been actually made, they became *ipso facto* liable to him for the amount received; and that he could not be called upon to sustain any loss from the conduct of the sub-agents, as between whom and himself no privity existed." " To solve the question," says Lord Cottenham, " it is not necessary to go deeper than to refer to the maxim, *Qui facit per alium, facit per se*. R. & Co. agreed, for a consideration, to apply for payment of the bill: they necessarily employed agents for this purpose, who received the amount. Their receipt was in law a receipt by them, and subjected them to all the consequences. The appellant with whom they so agreed cannot have any thing to do with those whom they so employed, or with the state of the account between different parties engaged in this agency."

The banker thus receiving the draft from its owner was held liable for the acts of the person employed by him, although free from negligence or fraud.   Cited 8 Ohio, *supra*, 481.

In 3 Seld. 459, *The Montgomery Co. Bank* v. *The Albany City Bank* and *Bank of the State of New York*, the former bank sent to the Albany City Bank, for collection, a draft for $1,800, payable thirty days after date.   The Albany bank transmitted the same for collection to its correspondent, the Bank of the State of New York, in the city of New York, who neglected to present the same for payment on its maturity, by means of which negligence the amount thereof was lost.   The Court of Appeals of the State of New York held that the Albany bank was the agent of the Montgomery bank; that the bank in New York was the agent of the Albany bank, and not of the Montgomery bank; and that the Albany bank was liable to the Montgomery bank for the neglect of its New York correspondent.   To this many cases are cited.   The recovery below against the Albany bank was affirmed, and the judgment against the New York bank was reversed.

To the same effect is *The Com. Bank of Penn.* v. *The Union Bank of New York*, 1 Kern. 203, and *Allen* v. *Merchants' Bank*, 22 Wend. 215.

These cases show that where a bank, as a collection agency, receives a note for the purposes of collection, that its position is that of an independent contractor, and that the instruments employed by such bank in the business contemplated are its agents, and not the sub-agents of the owner of the note.   It is not perceived that it can make any difference that such collection agency is composed of individuals, instead of being an incorporation.   These authorities go far towards establishing the position that Archer & Co., in the case before us, were independent contractors, and that the parties employed by them were their agents only, and not the agents of Wise & Co., in such manner that Wise & Co. are responsible for their negligence, or chargeable with their knowledge.   There are, doubtless, cases to be found holding to the contrary of these views; but the principle they decide is nevertheless well established.

Cases, no doubt, may also be found where actions have been sustained by the creditor against the last agent, or where he is

charged with his acts, in which the point before us was not raised or brought to the notice of the court. Such cases are not authority on the point. Nor do we think any great difficulty arises from the case of *Wilson* v. *Smith*, 3 How. 770. That decision is based upon the case of *Commonwealth Bank* v. *Bank of New England*, 1 How. 234, which is the only case referred to in the opinion, and in which case the question was not raised. The question there was not of privity, but of the right to retain under the circumstances stated. Again: in that case it was held, from the course of dealings between the banks, that it was fairly to be inferred that it was understood between them that the collections should be held subject to a settlement of accounts.

There is, however, another class of cases still more to the point.

In *Bradstreet* v. *Everson*, 72 Penn. St. 124, the case was this: The defendants were a commercial agency in Pittsburg, with agents throughout the United States, for the collection of commercial paper. The plaintiffs delivered to them, for collection, four drafts, payable in Memphis, Tenn. They sent them to Mr. Wood, their agent in Memphis, who obtained the money upon them, and, becoming embarrassed, failed to remit. On being called upon for the money, the defendants attempted to excuse themselves, on the ground that they followed the instructions of the plaintiffs, and were their agents merely, reporting from time to time; that Wood, who received the money, was not their agent; that he was a reputable man; and that they had never received the money from him.

Among other points, they insisted upon the following: viz., If the plaintiffs placed the acceptances in the defendants' hands for collection, and knew that their personal attention and direct service in such collection would not, in the usual course of business, be given to it at Memphis, and that the employment of an attorney to attend to it at Memphis was necessary, or the proper and usual course of doing such business, then the plaintiffs thereby made either such person or defendants their agent therein, with power to employ an attorney or sub-agent therein at Memphis; and their immediate agent under such authority would not be responsible for any default of

such sub-agent, if selected with reasonable care and diligence. And again they insisted, If the plaintiffs gave defendants at Pittsburg acceptances to collect at Memphis, they thereby constituted defendants their agents therein; and such agents are not responsible for any loss so long as they have used the usual diligence, and conducted themselves according to the usual course of doing such business. The questions now before us were thus directly presented. In a careful opinion delivered by Mr. Justice Agnew, citing many authorities, these propositions are overruled. The court hold that the receipt for collection imported an undertaking by the collecting agent himself to collect; not merely that he receives it for transmission to another for collection, for whose negligence he is not to be responsible. He is, therefore, liable by the very terms of his receipt for the negligence of the distant attorney who is his agent; and he cannot shift the responsibility from himself upon his client.

*Lewis & Wallace* v. *Peck & Clark*, 10 Ala. 142, and *Cobb* v. *Beake*, 6 Ad. & Ell. 930, are to the same purport. The last-named case is especially full and explicit.

We are of the opinion that these authorities fix the rule in the class of cases we are now considering; to wit, that of attorneys employed, not by the creditor, but by a collection agent who undertakes the collection of the debt. They establish that such attorney is the agent of the collecting agent, and not of the creditor who employed that agent. We concur, therefore, in the conclusion reached by the Court of Appeals of the State of New York, that McLennan was not the agent of Wise & Greenbaum, the New York creditors, in such a sense that his knowledge of the bankrupt condition of Oppenheimer is chargeable to them. Whether a different conclusion would have been reached if the money had come to the hands of Wise & Greenbaum we are not called upon to consider.

*The judgment is affirmed.*

Mr. Justice Miller, with whom concurred Mr. Justice Clifford and Mr. Justice Bradley, dissenting.

I feel constrained to express my dissent to the opinion of the court just delivered. Wise & Greenbaum were the *owners* of

the notes in this case. The judgment, which was undoubtedly a preference within the meaning of the Bankrupt Law, was taken in their name, and for their use and benefit. The attorney who procured the bankrupt to confess judgment acted for them, and was compelled to use their name. If the notes had been sent by them directly to McLennan, the attorney, it is conceded that they would have been liable in this action. I am at a loss to see how their liability is changed by the fact that the notes were sent to him through a commercial or collecting agency. This agency had no interest in the notes; was not liable to the attorney for his fees, nor to the bankrupt for costs, if an unsuccessful suit had been brought. The notes were not indorsed to this agency, nor could it in any manner have prevented Wise & Co. from controlling all the proceedings of the attorney for collecting the money.

The numerous cases cited from various courts of the relations between banks acting as collectors of money, among themselves and with others, stand on a different basis.

In all such cases, the note or bill is either indorsed to a bank, or made payable to it. The bank sues, if necessary, in its own name. It passes the amount usually to the deposit account of the person from whom received originally, and the account is so passed as between corresponding banks.

It is from this course of dealing that the series of decisions referred to in the opinion have been made.

So, also, there are numerous cases in which the first agent of a note, or claim-owner, may have acquired vested rights, as for fees or advances, or other considerations, which, as between themselves, authorized the first agent to control the debt.

But these cases differ very widely from the case before us, in which there is no evidence that the collection agency had a particle of interest, or any right to control the proceedings for collection adversely to the owner of the notes.

The effect of the decision is, that a non-resident creditor, by sending his claim to a lawyer through some indirect agency, may secure all the advantages of priority and preference which the attorney can obtain of the debtor, well knowing his insolvency, without any responsibility under the Bankrupt Law.

Very few creditors, when this becomes well known, will fail to act on the politic suggestion.