FIRST NATIONAL BANK OF CHICAGO *v.* RENO COUNTY BANK

*(Circuit Court, D. Kansas.   August 11, 1880.)*

1. BILLS OF EXCHANGE—RESTRICTIVE INDORSEMENTS.—Two bills of exchange, belonging to the plaintiff at Chicago, were indorsed for collection to a bank at Atchison, Kansas, and by said Atchison bank to a bank at Kansas City, Missouri, and by the latter to defendant, a bank at Hutchinson, Kansas.  *Held,* that they remain the property of plaintiff, all the indorsements being restrictive.

2. ASSIGNMENT "ON ACCOUNT OF" INDORSER, OR "FOR COLLECTION."— An indorsement on a bill of exchange directing the drawee to pay to another "on account of" the indorser, or "for collection," is a restrictive indorsement, the effect of which is to restrict the further negotiability of the bill, and to give notice that the indorser does not thereby give title to the bill, or to its proceeds when collected.

3. PRIVITY—RIGHT OF ACTION FOR PROCEEDS.—Although there may be no privity between the owner of the bill and the last indorsee, yet, if the latter collects the bill, he is bound to pay the proceeds to the owner, and the latter may recover in *assumpsit,* on the ground that the defendant has property in his possession which belongs to the plaintiff, and refuses to pay the same over.

Motion for new trial.

*Brown & Wright* and *Clough & Wheat,* for plaintiff.

*Gage & Ladd,* for defendant.

McCRARY, C. J.   This cause was tried before the court at the November term, 1879, and resulted in a judgment for the defendant.   At the request of Judge Foster, before whom it was tried, the motion for a new trial has been argued before the full bench.   The facts are as follows :

1. The plaintiff, which is a bank in Chicago, in July, 1878, became the owner, by assignment to it, of two negotiable bank checks drawn on the defendant, which is a bank at Hutchinson, Kansas.

2. Plaintiff transmitted said checks to W. Hetherington & Co., of Atchison, Kansas, indorsing each of them as follows:

"Pay to the order of W. Hetherington & Co., Atchison, account of First National Bank, Chicago.

"L. J. GAGE, Cashier."

3. The said Hetherington & Co. forwarded said check to the Mastin Bank, at Kansas City, Mo., indorsed as follows:

"Pay to the order of Mastin Bank. For collection. Account of Hetherington, Exchange Bank, Atchison, Kansas."

By letter enclosing said checks the Mastin Bank was requested to receive the same "for collection and credit."

4. The Mastin Bank sent said checks by mail to the defendant, with a letter stating the same to be for collection and credit, and the defendant, before 9 o'clock A. M. of August 3d, credited the amount of said checks to the Mastin Bank, cancelled, and placed them on the "sticker," and on the same day charged the amount thereof to the drawers thereof.

5. The Mastin Bank did business as a bank on August 2d, but failed, and did not open its doors on August 3d.

6. The parties through whose hands said checks passed, after they were indorsed to plaintiff, were all bankers, and doing business as collecting agents.

7. When plaintiff sent the checks to Hetherington & Co. they charged the amount thereof to them, and, upon receipt of the checks, Hetherington & Co. credited the amount thereof to plaintiff.

8. In like manner Hetherington & Co., upon transmitting said checks to the Mastin Bank, charged the amount thereof to the latter, and, upon receiving the checks on the first of August, the Mastin Bank credited the amount of them to Hetherington & Co.

9. The Mastin Bank, on the third of August, made an assignment of all its effects to Kersey Coats, as assignee, for the benefit of its creditors.

10. The Mastin Bank was largely indebted to defendant when it failed, and the defendant, *having collected the checks,* applied the amount upon said indebtedness.

11. The plaintiff and Hetherington & Co. were, and for a long time had been, correspondents, as had been Hetherington & Co. and the Mastin Bank, and the Mastin Bank and defendant. The transactions, charges, and credits were in the usual course of business.

12. In March, 1879, the plaintiff credited back on the books, to Hetherington & Co., the amount of these checks.

13. Hetherington & Co. proved their claim against the

estate of said Mastin Bank, including the amount of said checks, which claim was allowed in January, 1879, and they have since received from the assignee a dividend of 12 per cent. Such proof was not made at his suggestion, or with the knowledge of plaintiff.

14. Hutchinson, where defendant's bank is located, is more than 200 miles from Kansas City, where the Mastin Bank was located. Upon these facts the question is whether defendant, when it collected the money on the checks, became the debtor of the plaintiff or of the Mastin Bank. It is insisted on the part of plaintiff that the checks were the property of plaintiff, and that due notice of its ownership was communicated to the defendant by the restrictive indorsements thereon; and that the defendant has shown no right to retain their proceeds, or to apply the same on its claim against the Mastin Bank.

On the part of defendant it is insisted that plaintiff cannot recover because there is no privity between plaintiff and defendant. In the case of *Bank of Metropolis* v. *New England Bank,* 1 How. 234, it was held that if negotiable paper, not at maturity, be indorsed and delivered to a bank merely for collection, and be sent by such bank to another bank for collection, *without notice that it does not belong to the former,* the latter may retain the paper and its proceeds to satisfy a claim for a general balance against the former, *if that balance has been allowed to arise and remain on the faith of receiving payment from such collections,* pursuant to a long usage between the two banks. In that case it appeared that the paper in question was indorsed by the New England Bank, of Boston, to the Commonwealth Bank, of Boston, for collection merely, and the latter bank sent it for collection to the Bank of the Metropolis, in the city of Washington. The indorsement to the Commonwealth Bank did not show that the title was retained by the New England Bank. The Bank of the Metropolis having collected the paper and applied the proceeds to the payment of a claim held by it against the Commonwealth Bank, which, in the meantime, had become insolvent, sought to show, in justification, that for a series of years it had been in the

habit of receiving such paper from the Commonwealth Bank, which was always treated as the property of the Commonwealth Bank, and credited to it in its account current, and that the paper in question was received in that way, in the ordinary course of business, without any notification that any other party had any interest therein.

The court said: "It is evident that a loss must be sustained, either by the plaintiff or defendant in error, by the failure of the Commonwealth Bank. We see no good ground for maintaining that there is any superior equity on the side of the New England Bank. It contributed to give the corporation, which has proved insolvent, credit with the plaintiff in error, by the notes and bills which it placed in its hands to be sent to Washington for collection, *indorsed in such a form as to make them prima facie the property of the Commonwealth Bank, and enable it to deal with them as if it were the real owner.*" It will be seen that the case was decided upon the ground that the paper was indorsed so as to *show, prima facie,* a perfect title in the indorsee, thus enabling the latter to use it as its own, and to get credit on the faith of absolute ownership. It is clear that had the indorsement been restricted in its character, so as to show the continued ownership of the New England Bank, the result would have been different. Of the effect of restrictive indorsements I shall speak hereafter.

In the case of *Wilson & Co.* v. *Smith,* 3 How. 763, it was held that if the owner of a bill send it to an agent not residing at the place where it is payable, for collection, the agent has an implied authority to employ a sub-agent at that place, and, if the sub-agent receive the contents, the owner can sue him for money had and received, although the sub-agent had no notice, when he collected the money, that the agent was not the owner.

And it was also held that in such a case the sub-agent cannot retain part of the proceeds on account of a debt of the agent, *unless he has given credit on the faith that the agent owned the bill.* It is admitted that this case is decisive of the case at bar, unless it has been overruled by the recent case of

*Hoover, Assignee,* v. *Wise et al.* 91 U. S. 308, which must now be considered. That was a suit in bankruptcy. Wise & Greenbaum owned a money demand, which they delivered for collection to a collection agency in Nebraska. That agency transmitted the claim to an attorney, who, *knowing the insolvency of the debtor,* persuaded him to confess judgment. It was held that the attorney was the agent of the collection agency which employed him, and not of the creditors, and that therefore his knowledge of the insolvency of the debtor was not chargeable to them. The case undoubtedly holds that there is, in such cases, no privity between the last agent and the owner of the paper, and, therefore, if it be necessary for plaintiff, in the present case, to establish such privity between it and the defendant, this action must fail. Of course it was necessary, in the case of *Hoover* v. *Wise,* to show such privity, since that is the very foundation of the doctrine invoked in that case, that notice to the agent is notice to the principal; but in this case we are to consider whether the plaintiff's right to recover is not made out by showing that the bills collected by defendant were plaintiff's property, and that defendant had, in the restrictive indorsement on the paper itself, notice of plaintiff's ownership. That the bills were the property of plaintiff cannot be questioned. There is no pretence that it sold them to Hetherington & Co., or ever transferred any interest in them, or control over them, except the right to collect them for plaintiff's use and benefit. Is it not equally clear that defendant had notice of plaintiff's ownership? The indorsement by which plaintiff transferred the paper is in these words:

"July 29, 1878. Pay to the order of W. Hetherington & Co., Atchison. Account of First National Bank, Chicago.

"L. J. GAGE, Cashier."

This was clearly a restrictive indorsement, the effect of which was to restrict the further negotiability of the bills, and to give notice to the defendant that the plaintiff did not thereby give title to them, or to their proceeds, when collected. 1 Daniell on Negotiable Instruments, § 698, and cases cited. Such an indorsement "shows plainly that the

indorser does not mean to part with the absolute property in the bill, and is, therefore, barely authority to receive the money upon it." Edwards on Bills and Notes, § 277; *Leavitt* v. *Putman,* 3 N. Y. 494. "In every such case, although the bill may be negotiable by the indorser, yet every subsequent holder must receive the money subject to the original designated appropriation thereof, and, if he voluntarily assents to or aids in any other appropriation, it will be a wrongful conversion thereof, for which he will be responsible." Parsons on Prom. Notes, § 143, and cases cited. Upon these principles, which are clearly recognized in *Bank of Metropolis* v. *New England Bank,* and in *Wilson* v. *Smith, supra,* the plaintiff in this case is entitled to recover, unless a different doctrine is established by *Hoover* v. *Wise,* already referred to. In that case, as already seen, the only point decided was that the attorney who collected the debt for the collection agency "was not the agent of Wise & Greenbaum, the New York creditors, in such a sense that his knowledge of the bankrupt condition of Openheimer is chargeable to them." But suppose the attorney in that case, knowing that Wise & Greenbaum were the owners of the paper, had collected the money, and had refused to pay it over, assuming the right to apply it on a claim of his own against the collection agency, would it follow from this ruling that Wise & Greenbaum would have failed in a suit to recover it?"

That the court did not intend to overrule its previous decisions, above referred to, is, I think, clear from the language employed on page 314, as follows: "Nor do we think that any great difficulty arises from the case of *Wilson* v. *Smith,* 3 How. 763–70. That decision is based upon the case of *Commonwealth Bank* v. *Bank of New England,* 1 How. 234, which is the only case referred to in the opinion, and in which case the question was not raised. The question there was not one of privity, but of the right to retain under the circumstances stated." Precisely so, in this case, the question is as to the right of the defendant to retain the money under the circumstances. Inasmuch as it was plaintiff's money, and defendant had notice of that fact, I think he cannot retain it.

Even without such knowledge defendant would be liable. I fully approve the doctrine announced by the supreme court of Massachusetts in *Hall* v. *Marston*, 17 Mass. 574–79, as follows: "Whenever one man has in his hands the money of another, which he ought to pay over, he is liable to this action, (*assumpsit,*) although he has never seen or heard of the party who has the right. When the fact is proved that he has the money, if he cannot show that he has legal or equitable ground for retaining it, the law creates the privity and the promise." This doctrine is not in conflict with the decision of the supreme court in *Hoover* v. *Wise*. The defendant's claim, that it has the right to apply the proceeds of the checks collected by it to the liquidation of its claim against the Mastin Bank, is entirely without merit. There is not a shadow of ground for holding that the defendant believed the paper belonged to the Mastin Bank. The indorsement to that bank declares in plain words that it was "for collection," so that the defendant was definitely informed that the Mastin Bank did not own the check.

It appears that the plaintiff charged the checks to Hetherington & Co. at the time of sending them to that firm for collection; but this seems to have been in accordance with a custom prevailing in such transactions. The paper sent to an agent for collection is charged to the agent, and credit is given when it is returned uncollected, or, in case of collection, when the proceeds are remitted. This, however, does not affect the title to the paper or its proceeds; that depends upon the question whether the paper is *sold* or not, except in the case of an assignment on its face, purporting to be an absolute sale or transfer, upon the faith of which an innocent purchaser buys from the assignee, or advances money to him. It results from these views that a new trial must be granted, and that, upon the facts found, there must be judgment for plaintiff.

FOSTER, D. J., *dissenting.* I cannot concur with the circuit judge as to the law of this case. My views are fully presented

in an opinion written on the former trial of the case, and I need but add a few lines more. It will be seen I then based my decision on the doctrine established by the supreme court in the case of *Hoover, Assignee,* v. *Wise,* 91 U. S. 308–13, and upon that case I now stand.

While it is true the facts in that case are not altogether similar to the facts here, yet that case did fairly present the question as to privity of action between the principal and an agent appointed by his agent, and it was decided that no such privity existed.

On page 311 the court say: "Without attempting to harmonize or to classify the conflicting authorities, we think the case before us falls within a particular range of decisions in which the preponderance is undoubted. Among these are the following: *Reeves & Co.* v. *State Bank of Ohio,* 8 Ohio St. 465; *Mackersy* v. *Ramsays,* 9 Clark & Fin. 710–818; *Montgomery Co. Bank* v. *Albany City Bank,* 7 N. Y. 459; *Allen* v. *Merchants' Bank,* 22 Wend. 215; *Com. Bank* v. *Union Bank,* 11 N. Y: 203."

It will be seen, from the opinion itself, that the cases which are cited approvingly by the supreme court establish the doctrine that a person or bank employed by a principal to make a collection cannot appoint another person or bank to transact the business, and make the latter the sub-agent of the principal. The court then says: "These cases show that where a bank, as a collection agency, receives a note for the purposes of collection, that its position is that of an *independent contractor,* and that the instruments employed by such bank in the business contemplated are its agents, and not the sub-agents of the owner of the note. * * * There are, doubtless, cases to be found holding to the contrary of these views, *but the principle they decide is nevertheless well established.* Cases, no doubt, may also be found where actions have been sustained by the creditor against the last agent, or where he is charged with his acts, in which the point before us was not raised or brought to the notice of the court. Such cases are not authority on the point. Nor do we think that any great difficulty arises from the case of *Wilson* v.

*Smith,* 3 How. 763–70.    That decision is based upon the case of *Commonwealth Bank* v. *Bank of New England,* 1 How. 234, which is the only case referred to in the opinion, and in which case the question was not raised."

If this language does not overrule the doctrine enunciated in *Wilson* v. *Smith,* the principle this case clearly establishes, and the long array of cases cited with approbation, and which cannot be reconciled with *Wilson* v. *Smith,* it seems to me must be held to overthrow that case.    That I am not alone in this construction of the *Hoover* v. *Wise Case,* I refer to the case of *Hyde* v. *First Nat. Bank,* 7 Biss. 156, and *First Nat. Bank of Crown Point* v. *First Nat. Bank of Richmond,* decided by the supreme court of Indiana, November term, 1878, both of which cases rest upon this construction of the *Hoover* v. *Wise Case.*    In these cases the several indorsements were restrictive indorsements, showing that the paper passed through several banks for collection, as in the case at bar, and in the Indiana case the defendant bank had notice of the failure of its correspondent, the Cook County Bank, before collecting and crediting the money.    In these cases the *Hoover* v. *Wise Case* is cited as establishing the doctrine that no privity of action exists between the first creditor and the last collecting agent.    In other words, a collecting agent cannot appoint sub-agents for the first creditor.    The bank from which the defendant received the paper is its principal, and to which it is alone answerable, and by its principal in this case it was ordered to collect for, and credit to the account of, the Mastin Bank.    It obeyed that order, and that too before it knew of the failure of the Mastin Bank.    It will be seen, by the plaintiff's amended petition in this case, that it sues the Reno County Bank as its agent, placing its right of action on the ground that the Reno County Bank collected the money, not for the Mastin Bank, but for the Chicago Bank.    Indeed, it could not place its right of action on any other ground, for no one would contend that it could be sued as the drawee of the paper.

I am aware there is a direct conflict on this question among the state cases, but what I hold is that the *Hoover* v. *Wise*

*Case*, and the decisions it cites and approves, clearly establishes the doctrine that I contend for, and the last decision of the supreme court relieves me from any attempt to reconcile these conflicting decisions of the state courts.