AYRES v. THE FARMERS & MERCHANTS BANK, *Appellant.*

1. **Paper Deposited in Bank for Collection and Credit.** If paper be deposited in or forwarded to a bank for collection, and in pursuance of a pre-arranged mode of dealing the bank immediately places the amount to the credit of the depositor, and the depositor thereupon draws or is entitled to draw against the same as cash, this works a transfer of title, so that the depositor cannot afterward claim the paper: and it is immaterial that if the paper is not paid the bank has the right to charge it back. See *Bullene v. Coates, post,* p. 426.

2. **Case Adjudged.** Plaintiffs sent to the Mastin Bank a check drawn on defendants, indorsing it thus: "Pay J. J. Mastin, Cashier, for collection account of" plaintiffs. The check was inclosed in a letter, which stated that it was "for collection and credit." The Mastin Bank had a standing arrangement with plaintiffs to give them credit "on the day of receipt, for cash items and checks," and it gave credit for this check accordingly, and plaintiffs drew against it the day it was mailed. The Mastin Bank sent the check to defendants, who were its correspondents, and defendants charged the same to the drawer, who had sufficient funds, and credited it to the Mastin Bank. The latter had in the meantime failed and made an assignment, but defendants did not know this. *Held,* that the title to the check had vested in the Mastin Bank, and plaintiffs could not recover the amount of defendants.

*Appeal from Jackson Special Law and Equity Court.*—HON. R. E. COWAN, Judge.

REVERSED.

The plaintiffs Ayres, Kinsey, Thomas & Smith were co-partners doing business under the firm name of the Citizens' Bank.

*Lathrop & Smith* for appellant.

*Gage, Ladd & Small* for respondents.

HENRY, J.—On August 1st, 1878, Wickstrum & Swinson drew their check on the defendant for $500 in favor of H. W. Baker & Co., who indorsed it to plaintiff for a valu-

able consideration, and plaintiff sent it to the Mastin Bank for collection and credit to plaintiff.

There was evidence tending to prove a business arrangement between plaintiff and the Mastin Bank under which the amount of the check was passed to plaintiff's credit upon receipt of the check, and plaintiff was immediately entitled to draw against it, and on the day it was transmitted plaintiff drew upon the Mastin Bank for the full amount in favor of H. W. Baker & Co., from whom plaintiff received it; that the Mastin Bank received the check on the 2nd day of August, 1878, and on that day gave plaintiff credit on their books for the amount, and mailed to plaintiff a letter stating receipt of check and credit given, and on the same day charged the check to defendant on whom it was drawn, and mailed it to defendant for credit to its own account; that on the day after the receipt of the check by the Mastin Bank, that bank made a general assignment for the benefit of its creditors; that defendant received the check from the Mastin Bank by due course of mail, charged it to the drawers who had sufficient funds on deposit with defendant to pay it, and credited the amount to the Mastin Bank, without notice that the bank had failed and made a general assignment.

On the 7th day of March, 1878, the Mastin Bank sent the following card to plaintiff and defendant and its other correspondents:

"After this date this bank will give credit on day of receipt, to its correspondents, as formerly, for cash items and checks on banks in the interior. To aid in the speedy transaction of business, we request our correspondents to list all remittances for which they ask credit on receipt, on a separate sheet from that on which is listed time paper and collections. The amount should be carefully stated and correctly footed. Instructions for shipment of currency or transfers to other points should be given on separate sheets, to prevent the same being overlooked.

JOHN J. MASTIN, Cashier."

The following is the letter transmitting the check in question by plaintiff to the Mastin Bank:

" Citizens Bank.            Capital $100,000.

NORTH TOPEKA, KANS., 8–1, 1878.

J. J. MASTIN, Esq., Cas.,

         Kansas City, Mo.,

*Dear Sir :* We inclose for collection and credit items as stated below.         Very respectfully,

             J. THOMAS, Cashier.

| | | |
|---|---:|---:|
| Abilene Bank | $ 244 | 70 |
| do | 150 | 00 |
| Farmers & M | 500 | 00 |
| Germ. Nat | 4 | 22 |
| B. & Allen | 5 | 00 |
| You | 1,847 | 10 |
| | $2,751 | 02 |
| Latshaw—no pro | 100 | 00 |
| | $2,851 | 02 |

This letter inclosed two checks mentioned in the pleadings and read in evidence, as follows:

$244.70.        ABILENE, KANS., July 29th, 1878.

            ABILENE BANK.

LEBOLD, FISHER & Co.:

Pay to H. W. Baker & Co., or order, two hundred and forty-four dollars and seventy cents.

            M. V. BRILHART

Indorsed, H. W. Baker & Co.

Pay J. J. Mastin, Esq., Cashier, or order, for collection account of Citizens' Bank, N. Topeka, Kan.

            J. THOMAS, Cashier.

Pay and credit account of Mastin Bank, Kansas City, Mo.         JOHN J. MASTIN, Cashier.

The other check dated July 30th, 1878, was made in

the same form by E. Fuller Parent, for $150, and was indorsed just like that for $244.70.

This action is for the recovery from defendant of the amount of the check for $500, drawn by Baker & Co. upon defendant. On a trial plaintiff had judgment, from which this appeal is prosecuted; and the only question is: Under the business arrangement between the Mastin Bank and the plaintiff and defendant, what was the legal effect of the transactions between them with respect to that check? Did it become the property of the Mastin Bank, in such sense that plaintiff cannot maintain his action against defendant on the check? Morse, in his work on Banks and Banking, page 424, approves the following doctrine, "that if a bill or draft be forwarded by its owner for collection, and by order or custom of dealing the party receiving it places the amount to the credit of the owner, and the owner thereupon draws or is entitled to draw against the same as cash, this works a transfer of title, so that the owner cannot follow the paper or its proceeds in the hands of a third party receiving it in good faith and due course of business from the agent for collection." *Clark v. Merchants Bank*, 2 N. Y. 380; *Scott v. Ocean Bank*, 23 N. Y. 289. Lord Eldon in *Ex parte Sargeant*, 1 Rose 153, and several other cases, seems to have been of the opinion, it is said in a note to section 228 of Story on Agency, "that if the bills were entered as cash, with the knowledge of the customer, and he drew or was entitled to draw upon the banker, as having that credit in cash, he would thereby be precluded from recurring to the bills specifically." Judge Story says that this opinion of Lord Eldon was adopted by the vice-chancellor in *Ex parte Thompson*, 1 Mont. & McArthur 312; and in *Clark v. Merchants Bank, supra*, the court held expressly that "where the owner of a bill sends it to his correspondent to be collected, with directions to place it to his credit, and at the same time draws at sight against the fund, the title to the bill passes so that the proceeds cannot be fol-

lowed into the hands of third persons receiving them in good faith."

The cases of *Sweeny v. Easter*, 1 Wall. 166; *White v. National Bank*, 102 U. S. 658; *First National Bank v. Reno Co. Bank*, 1 McCrary 491; *Cecil Bank v. Farmers Bank*, 22 Md. 148; *Levi v. Bank*, 5 Dill. 107; *Mechanics Bank v. Valley Packing Co.*, 70 Mo. 643, and *Millikin v. Shapleigh*, 36 Mo. 598, are distinguished from the case at bar in the fact that in all those cases the paper was indorsed for collection only, and there is no conflict between any of those and the doctrine announced by Morse and the cases cited by him in its support. The case of *Lawrence v. Stonington Bank*, 6 Conn. 529, bears but slight resemblance to the case at bar. The draft there was drawn by a creditor upon his debtor, placed with a bank for collection, and that bank indorsed it for collection to the Eagle Bank, and the latter to the Stonington Bank for collection. On the 20th day of September the Stonington Bank had information that the Eagle Bank, which owed it $60, had failed, and five days thereafter it presented the draft to the drawer who paid it, and the Stonington Bank placed it to the credit of the Eagle Bank and refused to pay the amount to plaintiff, claiming that the draft was the property of the Eagle Bank. That case in its facts is wholly different from this. Here the owner of the check indorsed it to the Mastin Bank not only to collect but to be placed to its credit as soon as received, with a right to draw immediately for the amount. It was in effect a purchase of the paper by the Mastin Bank, and the fact that on default of payment by the drawee that bank had recourse upon the indorser did not prevent the title from passing. Such is the right of every indorsee for value, but he is none the less the owner of the paper.

We have not copied and shall not comment upon the instructions, only to remark that they did not declare the law as herein announced, and we reverse the judgment and

remand the cause, and on a re-trial the court will instruct the jury as herein indicated. All concur.

. In *Ayres v. Lebold et al.*, appellants, the same ruling was made as in the foregoing case, HENRY, J., delivering the opinion. Mahan & Burton and Pratt, Brumback & Ferry for appellants, and Gage, Ladd & Small *contra*.