(124 So. 222)

### LYNCH JEWELRY CO. v. BASS.
#### (6 Div. 421.)

Supreme Court of Alabama. Oct. 17, 1929.

Arlie Barber, of Birmingham, for appellee.

London, Yancey & Brower and J. Kirkman Jackson, all of Birmingham, for appellant.

BROWN, J. The complaint, as amended, consists of three counts, the first alleging that the defendant's agents or servants, "whilst acting then and there within the line and scope of their said services to, agency of, or employment by defendant corporation, falsely and maliciously charged plaintiff with being a thief, and with being a liar and with concealing personal property with the intent of hindering, delaying or defrauding some person who had a claim thereon, with full knowledge of the existence of such claim." The second alleges that "the servants, agents or employés of defendant whilst acting within the line and scope of their agency of, services to, or employment by defendant, committed an assault and battery upon the plaintiff" in a public place or store where plaintiff was employed; and the third alleges that defendant's agents or servants while acting within the scope of their employment, assaulted the plaintiff. The demurrers filed by the defendant were sustained to the first count, and overruled as to counts two and three, to which the defendant pleaded the general issue "in short by consent with leave," etc.

The evidence was without dispute that the plaintiff's husband, C. L. Bass, purchased from the defendant a diamond ring which he gave to plaintiff, after which they separated and divorce proceedings were instituted. The ring was purchased on the installment plan, defendant retaining the title thereto until the purchase price was fully paid. Bass failed to pay and defendant placed the claim against Bass for collection with the Commercial Collection Agency, a corporation under the management of one Kendrick, and for whom Brock worked as a collector. There is an absence of evidence showing that any limitation was placed on the authority of the collection agency by the creditor, or that it retained any supervision or control as to the method to be pursued in handling the claim, or limiting the liability of the agency.

The plaintiff's evidence tends to show that though she had returned the ring to Bass, Kendrick and Brock, accompanied by Bass, came to the store of plaintiff's employer, and for the purpose of obtaining possession of the ring, seized plaintiff's hand in an effort to take the ring or to identify it as being in her possession, accompanying their acts with abusive and insulting language.

For the purpose of showing that Kendrick and Brock were the agents of the defendant, and acting within the scope of their employment in attempting to gain possession of the ring or identify it on the plaintiff's hand, the court allowed the plaintiff to testify, over the defendant's objection, that she "called the Lynch Jewelry Company (over the telephone) and asked to speak to the credit man, and a man came to the phone and I told him I had been troubled again, and he said he was very sorry; they had turned the matter over to the collection agency, Commercial Collection Agency, to look after for them, and of course in a way it was out of his hands. He was very sorry I had been caused any embarrassment at all, and he asked me to call Mr. Brock, who was Manager of the Collection Agency, and talk to him about the matter." That thereupon she called the Commercial Collection Agency and asked for Mr. Brock, and some one answered the phone and said his name was Brock. I told Mr. Brock that I had called the Lynch Jewelry Company up and they said he was handling the matter for them and I would like to know the name of the gentleman that came down there at my store, where I was working, and raised such a disturbance, and he told me that Mr. Brock and Mr. Kendrick was (were) the men that came down there, and he says: 'I am very sorry, Madam, after it all happened.' He says: 'You know our game is purely a game of bluff.' He also said: 'We had to get the ring for our client, if we could,' and he says: 'I am sorry if you were caused any embarrassment'; that's what he told me."

Both Brock and Boatrite, the manager of defendant corporation, denied that any such conversation occurred, and the defendant offered evidence going to show that Brock and Kendrick were acting for and in the instance of plaintiff's husband, and that no assault or assault and battery was committed on plaintiff.

In McCarthy v. Hughes, 36 R. I. 66, 88 A. 984, 985, Ann. Cas. 1915D, 26, 28, 29, the court had occasion to consider the relation between a creditor and a collection agency who received claims for collection, and the rules of law governing this relation, and after reviewing the authorities, the conclusion was reached that in the absence of contract limiting its liability, such collection agency is an independent contractor, and that the creditor is not liable for the acts of the collection agency performed through its immediate employés. We quote from that case:

" 'A collection agency is a concern whose business it is to collect all kinds of claims, as well as notes, drafts, and other negotiable instruments, on behalf of others, and to render an account of the same.' The liability is stated thus: 'An agency of this kind, upon receiving a claim for collection, guarantees that it will use its best endeavors to collect the same; that where suit is necessary it will select a competent and reliable attorney for the purpose, and in the event of the negligence, dishonesty, or unauthorized acts of the latter will save the creditor harmless.'

"This statement as to the liability is supported by several cases. In the case of Hoover v. Wise, 91 U. S. 308, 23 L. Ed. 392, affirming Hoover v. Greenbaum, 61 N. Y. 305, the case is stated by the court thus:

" 'It appears from the record that an account or money demand was delivered by its owners to Archer & Co., a collecting agency in the city of New York, and received by them, with instructions to collect the debt, and with no other instructions; that this agency transmitted the claim to McLennan & Archbold, a firm of practising lawyers in Nebraska City. Several acts of bankruptcy had been committed by Oppenheimer when Mr. McLennan persuaded him to confess judgment for the debt thus sent to him. Proceedings in bankruptcy were instituted against Oppenheimer within four months after such confession, and were prosecuted to a decree of bankruptcy. At the time of receiving the confession McLennan was well aware of the insolvency of Oppenheimer, and that the confession was taken in violation of the provisions of the Bankrupt Act.

" 'The money collected was remitted to the collection agents in New York from whom he received the claim, but never paid by them to Wise & Greenbaum, the creditors.

" 'When the debt in question was delivered to the collection agency in New York, it was so delivered, as testified by one of its owners, "for collection." "Archer & Co.," he says, "were collection agents in New York. I gave them no directions except to try their best to collect it. They told me they would send it out (to Nebraska). I gave no other instructions." "The business of Ledyard, Archer & Co. (he says) was to take claims for collection in different parts of the country, and, if necessary, have them sued."

" 'Mr. Archer, of the collection firm. testifies that he received the claim for collection; that he told the defendants, if sent on at once, he thought it could be collected; that the account was verified by one of the defendants, and sent by the witness to Mr. McLennan, a lawyer, at Nebraska City; that he afterwards told the defendants the account had been put in judgment, and that he hoped to make the money, or the greater part of it. When he made this communication he had McLennan's letter in his hand, and communicated it to the defendants. He further testified that the money had been received by him from McLennan, but had never been paid over to Wise & Co.

" 'The referee held that the knowledge of the condition of the bankrupt by the attorneys residing in Nebraska, who took the confession of judgment, was the knowledge of the creditors in New York. The Supreme Court and the Court of Appeals adjudged otherwise, holding them to be the agents of Archer & Co., and not of Wise & Greenbaum, the creditors. It is upon this point of difference that the case is now presented for decision.'

"After speaking of the general principles of agency, the court says:

" 'Upon these general principles we find no difficulty. But the real question still remains: Was McLennan, of Nebraska the agent and attorney of Wise & Co., the owners of the debt? or were Archer & Co., the collection agents, his principals? and was it to them only, and not to Wise & Co., that he stood in the relation of agent and attorney?

" 'The evidence was uncontradicted in every particular. It became, therefore, as stated in the opinion of the Court of Appeals, a question of law whether the evidence sustained the findings of the referee.

" 'The rule of law is undoubted: That for the acts of a subagent the principal is liable, but that for the acts of the agent of an intermediate independent employer he is not liable.

" '* * * 'Without attempting to harmonize or to classify the conflicting authorities, we think the case before us falls within a particular range of decisions, in which the preponderance is undoubted.'

"The court then cites: Reeves v. State Bank of Ohio, 8 Ohio St. 465; Mackersy v. Ramsays, 9 Cl. & F. (Eng.) 818; Montgomery County Bank v. Albany City Bank, 7 N. Y. 459; Commercial Bank of Penn. v. Union Bank of New York, 11 N. Y. 203 and Allen v. Merchants' Bank, 22 Wend. (N. Y.) 215, 34 Am. Dec. 289.

"The court then proceeds:

" 'These cases show that where a bank, as a collection agency, receives a note for the purposes of collection, that its position is that of an independent contractor, and that the instruments employed by such bank in the business contemplated are its agents, and not the subagents of the owner of the note. It is not perceived that it can make any difference that such collection agency is composed of individuals, instead of being an incorporation. These authorities go far towards establishing the position that Archer & Co., in the case before us, were independent contractors, and that the parties employed by them were their agents only, and not the agents of Wise & Co., in such manner that Wise & Co. are responsible for their negligence, or chargeable with their knowledge. * * *

" 'There is, however, another class of cases still more to the point.

" 'In Bradstreet v. Everson, 72 Pa. 124 [13 Am. Rep. 665], the case was this: The defendants were a commercial agency in Pittsburg, with agents throughout the United States, for the collection of commercial paper. The plaintiffs delivered to them, for collection, four drafts, payable in Memphis, Tenn. They sent them to Mr. Wood, their agent in Memphis, who obtained the money upon them, and, becoming embarrassed, failed to remit. On being called upon for the money, the defendants attempted to excuse themselves, on the ground that they followed the instructions of the plaintiffs, and were their agents merely, reporting from time to time; that Wood, who received the money, was not their agent; that he was a reputable man; and that they had never received the money from him.

" 'Among other points, they insisted upon the following, viz.: If the plaintiffs placed the acceptances in the defendants' hands for collection, and knew that their personal attention and direct service in such collection would not, in the usual course of business, be given to it at Memphis, and that the employment of an attorney to attend to it at Memphis was necessary, or the proper and usual course of doing such business, then the plaintiffs thereby made either such person or defendants their agent therein, with power to employ an attorney or subagent therein at Memphis; and their immediate agent under such authority would not be responsible for any default of such subagent, if selected with reasonable care and diligence. And

again they insisted, if the plaintiffs gave defendants at Pittsburgh acceptances to collect at Memphis, they thereby constituted defendants their agents therein; and such agents are not responsible for any loss so long as they have used the usual diligence, and conducted themselves according to the usual course of doing such business. The questions now before us were thus directly presented. In a careful opinion delivered by Mr. Justice Agnew, citing many authorities, these propositions are overruled. The court held that the receipt for collection imported an undertaking, by the collecting agent himself, to collect, not merely that he receives it for transmission to another for collection, for whose negligence he is not to be responsible. He is, therefore, liable by the very terms of his receipt for the negligence of the distant attorney who is his agent; and he cannot shift the responsibility from himself upon his client.

"'Lewis & Wallace v. Peck & Clark, 10 Ala. 142, and Cobb v. Becke, 6 Ad. & El. N. S. (Eng.) 930, are to the same purport. The last named case is especially full and explicit.

"'We are of the opinion that these authorities fix the rule in the class of cases we are now considering, to wit, that of attorneys employed, not by the creditor, but by a collection agent who undertakes the collection of the debt. They establish that such attorney is the agent of the collecting agent, and not of the creditor who employed that agent. We concur, therefore, in the conclusion reached by the Court of Appeals of the state of New York, that McLennan was not the agent of Wise & Greenbaum, the New York creditors, in such a sense that his knowledge of the bankrupt condition of Oppenheimer is chargeable to them.'

"We think this reasoning is sound. In our opinion a collection agency, in taking steps for the collection of accounts, in the absence of a special contract limiting its liability, and no such contract is here claimed, is an independent contractor, and is liable to those whom it employs in the business of making collections."

See, also, Smith v. National Bank of D. O. Mills & Co. (C. C.) 191 F. 226; Simpson v. Waldby, 63 Mich. 439, 30 N. W. 199; Talcott v. Cowdry, 17 Misc. Rep. 333, 39 N. Y. S. 1076.

█ We concur in the conclusion stated by the Rhode Island court, and, viewing the evidence in its light most favorable to the plaintiff, hold that Kendrick and Brock, who were the immediate employees of the Commercial Collection Agency and acting for it, were not the agents or employees of the defendant jewelry company; and the court erred in refusing the affirmative charge requested by the defendant.

The holdings in Allison-Russell-Withington Co. v. Sommers, 219 Ala. 33, 121 So. 42, and Rochester-Hall Drug Co. v. Bowden, 218 Ala. 242, 118 So. 674, are readily differentiated from the case at bar. In the case first above noted, the question of subagency and the authority of the collection agency to employ an attorney to act for and in the name of the creditor in the prosecution of a suit at law for and in the name of the creditor was involved; and under the facts of that case it was held that such authority was conferred, and that the employment created the relation of attorney and client between the creditor and the attorney so employed. In the case at bar, the alleged trespass was committed by the immediate servants of the collection agency acting in and for it in the prosecution of its business.

In the other case, this court was reviewing the decision of the Court of Appeals in the light of the facts stated in the opinion of that court, which assumed that the relation of principal and agent existed between the drug company and Lowe; and the only question discussed was whether or not the facts stated warranted a finding by the jury that Lowe in unlawfully detaining Bowden was acting within the scope of his employment as such agent, considered in connection with the evidence, also stated in the opinion, going to show that the managing agent of the drug company—its alter ego, Dr. Rochester—was present, participated in, and rendered assistance to Lowe in the alleged false imprisonment of the plaintiff.

██ We are also of opinion that the alleged conversation between plaintiff and defendant's "credit man," and that between plaintiff and Brock, were declarations in respect to past transactions, and must be condemned as mere hearsay evidence. Bessemer Coal, Iron & Land Co. v. Doak, 152 Ala. 166, 44 So. 627, 12 L. R. A. (N. S.) 389; Bank of Phoenix City v. Taylor, 196 Ala. 665, 72 So. 264; 1 R. C. L. 510, § 50.

Let the judgment be reversed.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.